# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                    |   |
|------------------------------------|---|
| IN RE MICROSOFT CORPORATION        | ) MDL Docket No. 1332 |
|                                    | ) |
|                                    | ) |
| LINDA DAMERON KLOTH, et al.,       | ) |
|                                    | ) Hon. J. Frederick Motz |
| Plaintiff,                         | ) |
|                                    | ) |
| v.                                 | ) |
|                                    | ) |
| MICROSOFT CORPORATION,             | ) |
|                                    | ) |
| Defendant.                         | ) |

## PLAINTIFFS' MOTION FOR AN ORDER OF PARTIAL
## SUMMARY JUDGMENT AND TO ESTOP
## MICROSOFT FROM CONTESTING CERTAIN ISSUES

Pursuant to Rules 16(c) and 56 of the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 105, plaintiffs respectfully move for an order of partial summary judgment and to estop Microsoft Corporation ("Microsoft") from contesting certain issues. See Rule 56(d) Statement of Issues That Microsoft Is Estopped From Contesting ("Rule 56(d) Statement").

Plaintiffs allege that Microsoft unlawfully maintained a monopoly in the market for Intel-compatible personal computer operating systems in violation of Section 2 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. §2. See, e.g., Count I of Consolidated Amended Complaint, ¶¶63-64, 81-139 and 166-168.

Notwithstanding Microsoft's denials herein, Microsoft's violation of Section 2 was fully tried and resolved against Microsoft, and was unanimously affirmed on appeal, in <u>United States, et al. v. Microsoft Corp.</u>, 84 F.Supp.2d 9 (D.C.D.C. 1999), 87 F.Supp.2d 30 (D.C.D.C. 2000), 253 F.3d 34 (D.C. Cir. 2001)("Government Action"),

As is demonstrated in the accompanying memorandum, Microsoft may not now contest issues that it already litigated and lost in the Government Action.

The Court should enter an order of partial summary judgment that Microsoft violated Section 2 of the Sherman Act and is estopped from contesting herein the issues set forth in the Rule 56(d) Statement.

Dated: August 12, 2002

                                        Respectfully submitted,

  /s/ Stanley Chesley                      /s/ Michael Hausfeld

Stanley M. Chesley                  Michael D. Hausfeld
Waite, Schneider, Bayless           Cohen, Milstein, Hausfeld,
 & Chesley Co., L.P.A.               & Toll, PLLC
1513 Fourth & Vine Tower              1100 New York Avenue, NW
One West Fourth Street              Suite 500
Cincinnati, OH 45202                Washington, D.C.  20005

                        Co-Chairs

                 /s/ Christopher Lovell
                  Christopher Lovell
                  Peggy Wedgworth
                  Lovell & Stewart, LLP
                  500 Fifth Avenue

                        2

Suite 5800
New York, N.Y.  10110


Ben Barnow                          Joseph Danis
Barnow & Goldberg                   Carey & Danis
1 N. LaSalle St., Ste. 4600         8182 Maryland Ave.
Chicago, IL 60602                   St. Louis, MO 63105



Robert Lieff                        Leonard B. Simon
Lieff Cabraser Heimann              Milberg, Weiss, Bershad,
 & Bernstein, LLP                    & Hynes & Lerach
275 Battery Street, Ste. 3000        600 West Broadway, Ste. 1800
San Francisco, CA 94111             San Diego, CA 92101



Alice McInerney                     Douglas Thompson
Kirby McInerney & Squire, LLP        Finkelstein, Thompson &
                                        Loughran
830 Third Avenue                    1055 Thomas Jefferson St., SW
New York, N.Y.  10022               Suite 6012
                                    Washington, D.C.  20007


PLAINTIFFS' LEAD COUNSEL COMMITTEE

3

PLAINTIFFS' EXECUTIVE COMMITTEE

Gordon Ball
Law Offices of Gordon Ball
750 Nations Bank Center

550 Main Avenue
Knoxville, TN 37902


John J. Cummings III
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA 70130

Linda P. Nussbaum
Pomerantz, Haudek, Block, Grossman
& Gross LLP
100 Park Avenue, 26th Floor
New York, NY  10017-5516
3052

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
S.
Philadelphia, PA  19106


Robert A. Skirnick
Meredith Cohen Greenfogel, & Skirnick, P.C.
63 Wall Street
New York, NY  10005

Nicholas E. Chimicles
Chimicles & Tikellis LLP
361 West Lancaster
Avenue
One Haverford Centre
    Haverford,  PA
    19041-0110

Dianne M. Nast
Roda & Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Lynn L. Sarko
    Keller Rohrback, LLP
1201 Third Avenue
Suite 3200
    Seattle, WA  98101-

David D. Shelby
Shelby & Cartee
    2956 Rhoades Circle,

Birmingham, AL  35205

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORPORATION ) | MDL Docket No. 1332 |
| ) | |
| LINDA DAMERON KLOTH, et al., ) | |
| ) | Hon. J. Frederick Motz |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MICROSOFT CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT
AND TO ESTOP MICROSOFT FROM CONTESTING CERTAIN ISSUES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 1

    A.  Plaintiffs Claim That Microsoft Unlawfully
        Monopolized The Market For Intel-Compatible
        Personal Computer Operating Systems
        In Violation Of Section 2 Of The Sherman Act . . . .1

    B.  Microsoft Denies That It So Violated Section 2
        Of The Sherman Act And, Moreover, Denies That It
        Even Possessed Monopoly Power In The Market For
        Intel-Compatible Personal Computer Operating Systems .2

    C.  Microsoft Has Already Been Held In
        The Government Action To Have Unlawfully
        Monopolized The Market For Intel-Compatible
        Personal Computer Operating Systems In
        Violation Of Section 2 Of The Sherman Act . . . . . 3

    D.  Final Preclusive Findings Of Fact And Conclusions
        Of Law Have Been Entered Against Microsoft
        On The Relevant Market, Microsoft's
        Monopoly Power In The Relevant Market, Microsoft's
        Anticompetitive Acts, And Other Issues . . . . . . .7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .10

I.  Issue Limitation Under Rule 16(c) and
    Partial Summary Judgment Under Rule 56 Are
    Valuable Procedural Tools For Collateral Estoppel . . . 10

II. All The Elements Of Collateral Estoppel
    Are Satisfied Here . . . . . . . . . . . . . . . . . 12

    A.  Microsoft Was The Sole Defendant In The
        Government Action . . . . . . . . . . . . . . 14

B.  The Issues As To Which Collateral Estoppel
    Is Sought Herein Are Identical To The Issues
    Decided In The Government Action . . . . . . . . . .14

    1.  The Same Legal Violation And Same
        Required Elements Are Present in Both Cases . . 14

    2.  The Same Relevant Market Is Present In Both
        Cases . . . . . . . . . . . . . . . . . . . . 15

    3.  The Same Monopoly Power Is Present In Both
        Cases . . . . . . . . . . . . . . . . . . . . 15

    4.  The Same Anticompetitive Acts Are Present In Both
        Cases     . . . . . . . . . . . . . . . . . . 16

C.  The Issues To Be Precluded Were Necessary And Central
    To Determination Of The Government Action . . . . . 17

D.  The Findings In The Government Action Are Final . . 17

E.  Plaintiffs Could Not Join The Government Action . . 18

F.  Microsoft Had Every Incentive And A Full
    And Fair Opportunity To Defend Itself In
    The Government Action. . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . .19

## **Table of Authorities**

**Page**

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487-88 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Carr v. District of Columbia*, 646 F.2d 599, 60 (D.C. Cir. 1980) 11

*Fate v. Dixon*, 649 F.Supp. 551, 559 (E.D.N.C. 1986) . . . . .18

*First Federal Savings & Loan v. Greenspan*, 1989 U.S. Dist. LEXIS 8964 (D.Md. July 18, 1989)(Motz, J.) . . . . . . 18

*Gould v. Newton*, 802 F.Supp. 950 (W.D.N.Y. 1992) . . . . . . 11

*Maryland v. Capital Airlines*, 267 F.Supp. 298 (D. Md. 1967). .11

*McCord v. Bailey*, 636 F.2d 606, 610-611 (D.C. Cir. 1980) . . 11

*18 Moore's Federal Practice* § 132.02[2][c] (3d ed. 1999) . . 13

*18 Moore's Federal Practice* § 132.02[5][a] (3d ed. 1999) . . 11

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F.Supp. 962, 965 (N.D. Ill. 1982) . . . . . . . . . . . .11

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979). . . 12

*Polk v. Montgomery County*, 782 F.2d 1196 (4th Cir. 1986) . . .12

*Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994) . . . . . . .12

*Rye v. U.S. Steel Min. Co., Inc.*, 856 F.Supp. 274 (E.D. Va. 1994) . . . . . . . . . . . . . . . . . . . . . . . .11

*Sedlack v.Braswell Services Group, Inc.*, 134 F.3d 219, (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*U.S. v. Microsoft Corp.*, 253 F.3d 51 (D.C. Cir. 2001) . . . .5

i

*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956) . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Microsoft Corp.*, 84 F.Supp.2d 9 (D.D.C. 1999).4

*United States v. Microsoft*, 122 S.Ct. 350 (2001) . . . . . .6

*United States v. Microsoft*, 87 F.Supp.2d 30 (2000)(D.D.C.2000).4

*United States v. Grinnell Corp.*, 384 U.S. 563(1966) . . . . .15

*Virginia Hospital Association v. Baliles*, 830 F.2d 1308 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . .12

## PRELIMINARY STATEMENT

Pursuant to Rules 16(c) and 56 of the Federal Rules of Civil Procedure, plaintiffs respectfully move for (a) a partial summary judgment that Microsoft Corporation ("Microsoft") unlawfully monopolized the market for Intel-compatible personal computer operating systems in violation of Section 2 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. §2; and (b) an order that Microsoft is estopped from contesting the findings of fact and conclusions of law finally entered against it relating to the relevant market, Microsoft's monopoly power in the relevant market, Microsoft's anticompetitive acts to maintain and extend such monopoly power, and the other subsidiary matters set forth in Fed.R.Civ.P. 56(d) Statement of Issues That Microsoft Is Estopped From Contesting ("Rule 56(d) Statement").

The summary judgment sought is partial because it does not extend to the issue of whether Microsoft inflated the prices of Intel-compatible personal computer operating systems nor to many of the issues herein relating to Microsoft's alleged unlawful acts regarding applications programs.

## STATEMENT OF FACTS

**A.    Plaintiffs Claim That Microsoft Unlawfully Monopolized The Market For Intel-Compatible Personal Computer Operating Systems In Violation Of Section 2 Of The Sherman Act**

Plaintiffs allege that Microsoft violated Section 2 of the

Sherman Act, 15 U.S.C. §2, by unlawfully maintaining and extending its monopoly power in the market for licensing of Intel-compatible personal computer operating systems. Consolidated Class Action Complaint Count I, and par. ("C ¶") 1a; 61-62 (relevant geographical market), 63-65 (Microsoft's monopoly power over operating systems); 81-139 (Microsoft's anticompetitive activities by which it maintained its monopoly power in violation of Section 2 of the Sherman Act); and 166-168 (Count I for "Monopolizing Operating System").

In particular, plaintiffs allege:

> Microsoft possesses monopoly power in the market for Intel-compatible PC operating system software. Through the anticompetitive conduct described herein, Microsoft has willfully acquired and/or maintained its monopoly power in this market. Microsoft has acted with an intent to illegally acquire and/or maintain its monopoly power, and its anticompetitive conduct has enabled it do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

C ¶167; see Count I.

**B.    Microsoft Denies That It So Violated Section 2
Of The Sherman Act And, Moreover, Denies That It
Even Possessed    Monopoly Power In The Market For
Intel-Compatible Personal Computer Operating Systems**

In its Answer dated March 1, 2001, Microsoft has denied violating Section 2 of the Sherman Act. Answer ¶¶ 60, 63, 65,

166-168).

Moreover, Microsoft even has denied possessing monopoly power over Intel-compatible personal computer operating systems (Answer ¶¶61-74) and further denied that such market constitutes the relevant market. _Id._ Microsoft has specifically denied committing each of the alleged anticompetitive acts summarized on pp. 7-8 hereof. Answer ¶¶ 99-165.

**C.  Microsoft Has Already Been Held In    The Government Action To Have Unlawfully   Monopolized The Market For Intel-Compatible Personal Computer Operating Systems In Violation Of Section 2 Of The Sherman Act**

However, Microsoft already has had a full and fair opportunity in an action brought by the United States Department of Justice to litigate whether Microsoft unlawfully monopolized the market for Intel-compatible personal computer operating systems in violation of Section 2 of the Sherman Act. _United States v. Microsoft Corp._, 253 F.3d 34 (D.D.C. Cir. 2001). Final judgment has been entered against Microsoft holding that it did so violate Section 2 and, further, numerous findings of fact and holdings were "finally" made against Microsoft regarding the same allegations of relevant market, market power and anticompetitive acts as are made herein. _See_ Rule 56(d) Statement.

Specifically, on July 18, 1998, the United States and nineteen states[1] filed a consolidated complaint in the United States District Court for the District of Columbia (the "Government Action") alleging that Microsoft violated Section 2 of the Sherman Act by engaging in numerous restrictive contracts and exclusionary practices designed to maintain and extend its monopoly in the market for the licensing of operating systems for Intel-compatible personal computers, i.e., the alleged violation at issue herein.

Part of Microsoft's full and fair opportunity to litigate the issues herein included extensive pre-trial (and pre-complaint) proceedings followed by a 76 day trial in the Government Action.  C ¶¶14-15; United States v. Microsoft Corp., 84 F.Supp.2d 9 (D.D.C. 1999)("FOF").  On November 5, 1999, the Court entered 412 separate Findings of Fact against Microsoft. Id.; see Exhibit A to Rule 56(d) Statement.

Another part of Microsoft's full and fair opportunity to litigate the issues herein consisted of extensive briefing concerning the appropriate conclusions of law to be made based upon the bedrock of the foregoing 412 separate Findings of Fact in the Government Action.  See  United States v. Microsoft

---

[1] These included Connecticut, the District of Columbia, Florida, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, New Mexico, New York, North Carolina, Ohio, Utah, West Virginia and Wisconsin.

<u>Corp.</u>, 87 F.Supp.2d 30 (D.D.C. 2000).

The result was that the District Court, on April 3, 2000, concluded that Microsoft violated Section 2 of the Sherman Act by anticompetitively maintaining a monopoly over "the worldwide market for Intel-compatible personal computer operating systems". <u>Id.</u>; <u>see also</u>, FOF ¶¶18, 33-35. Again, this is the same violation that plaintiffs allege in Count I. C ¶¶166-168. Moreover, the Court found that such violation inhered in the same market power in the same relevant market as have been put into issue here. <u>Compare</u>, C ¶¶63, 64, 167 with FOF ¶¶18, 33-55, <u>Microsoft</u>, 87 F.Supp.2d at 36, 253 F.3d at 51-54.

Microsoft's previous full and fair opportunity to litigate an operating system monopoly violation also included a full-blown appeal in the Government Action to an *en banc* panel of the United States Circuit Court of Appeals. <u>United States v. Microsoft Corp.</u>, 253 F.3d 51 (D.D.C. Cir. 2001)(en banc).

On August 2, 2001, such Court of Appeals (seven Circuit Judges sitting *en banc*) unanimously affirmed the District Court's Findings of Fact and judgment that Microsoft violated Section 2 of the Sherman Act by unlawfully monopolizing the market for Intel-compatible personal computer operating systems. <u>See</u> <u>U.S. v. Microsoft Corp.</u>, 253 F.3d at 51 ("Defining the market as Intel-compatible personal computer operating systems,

the District Court found that Microsoft has a greater than 95% market share.    It also found the company's market position protected by a substantial entry barrier . . . . [W]e uphold the District Court's finding of monopoly power in its entirety.")

Moreover, the Court of Appeals expressly affirmed and deferred to the factual findings of the District Court. 253 F.3d at 50, 117-118[2].    The Court of Appeals reversed two of the alternative theories of violations as well as the relief provisions of the judgment against Microsoft.[3] See 253 F.3d at 46.    It remanded solely for further proceedings on these limited aspects of the judgment.

Microsoft's full and fair opportunity to litigate also included a petition for a writ of *certiorari* to the U.S. Supreme Court seeking to vacate and reverse the affirmance by the D.C.

---

[2] The Court of Appeals noted in its opinion how Microsoft did not contest the District Court's Findings of Fact.  For example, it stated  "[Microsoft] fails to challenge the District Court's factual findings", a "flaw that infects many" of Microsoft's claims (253 F.3d at 52); "This general conclusory statement falls far short of what is required to challenge findings as clearly erroneous." (ibid. at 53); "Again, Microsoft fails to challenge these findings (ibid.) etc.; "Because [Microsoft] does not challenge these findings, we have no reason to believe that prompt substitutes are available". Id. at 57.

[3] The two alternative theories of violation that the Court of Appeals vacated were attempted monopolization and tying. The Court directed a re-trial of the tying claim, but a subsequent settlement avoided such trial. 253 F.3d at 84-96.

-6-

Circuit Court of Appeals, including the ruling that Microsoft violated Section 2 of the Sherman Act by unlawfully monopolizing personal computer operating systems. <u>United States v. Microsoft Corp.</u>, __ U.S. __, 122 S.Ct. 350 (2001). On October 9, 2001, the judgment that Microsoft violated Section 2 of the Sherman Act by unlawfully monopolizing Intel-compatible personal computer operating systems became "final" when the U.S. Supreme Court denied Microsoft's petition for certiorari. <u>Id</u>.

### D. Final Preclusive Findings of Fact And Conclusions Of Law Have Been Entered Against Microsoft On Microsoft's Monopoly Power In The Relevant Market, Microsoft's <u>Anticompetitive Acts, And Other Issues</u>

Plaintiffs expressly allege in their Consolidated Complaint that Microsoft's anticompetitive acts by which it maintained its monopoly power in the relevant market in violation of Section 2 of the Sherman Act included, among other things:

- insisting upon and enforcing restrictive provisions in Microsoft's agreements and licenses with the Original Equipment Manufacturers ("OEM's") that prohibited OEM's from adding to, deleting from, or modifying the operating system, its start-up sequence or the context and appearance of the Windows desktop© ¶¶84-86); Those restrictions included the prevention of "OEM's from altering the Windows '95 boot-up sequence . . . These restrictions also limited an OEM's ability to substitute or feature a non-Microsoft browser or other application." (C ¶134(f))(see (a) and (b) below);

- insisting upon and enforcing provisions in agreements with independent software vendors ("ISVs") to require "ISVs to use Microsoft's version of the Windows Java as the 'default'" (C ¶136-138)(see (e) below);

- deceiving Java developers by burying a necessary link for Java to run on windows "in an obscure location and neglected to include an entry for it in the site's index." (C ¶138)(see (c) below);

- forcing Intel to cease development of software which would "serve as a platform on which applications could be developed," and precluding this innovation from reaching consumers. (C¶ ¶129-130)(see (d) below); and

- bundling its own Internet Explorer with Windows 95 both technically and contractually, and intertwining "the implementation of Windows 98 with Internet Explorer, so that it could not be simply 'de-installed.'" (C ¶134(g)-(h))(see (e) and (f) below).

Similarly, when the U.S. Supreme Court denied certiorari, there also became "final" the District Court's findings in the Government Action that Microsoft engaged in the same anticompetitive acts as were originally alleged herein. For example, Microsoft

a. "threaten[ed] to terminate the Windows license of any OEM that removed Microsoft's chosen icons and program entries from the Windows desktop or the "Start" menu. It threatened similar punishment for

-8-

OEMs who added programs that promoted third-party software to the Windows 'boot' sequence." It further rewarded OEMs who promoted Microsoft's web browser over Netscape's Navigator with special business opportunities and other competitive advantages.(FOF ¶¶ 203, 230-238)(253 F.3d at 64, 66-68);

b. "forc[ed] OEMs to accept a series of restrictions on their ability to reconfigure the Windows 95 desktop and boot sequence....." including the prohibition against: (1) removal of any icons, folders or "start" menu entries, (2) modification of the initial Windows boot sequence, and (3) installation of programs which would launch automatically. (FOF ¶ 145, 159, 203, 212-214, 217)(253 F.3d at 64);

c. deceived Java/software developers to use Microsoft developer tools for Java in writing software and "failing to warn developers that their use would result in

applications that might not run properly with" any other environments other than Microsoft's causing developers to write programs "without ever realizing they" were writing programs that would only run in a Microsoft environment and other coercive tactics. (FOF ¶¶ 386, 394,398, 406)(253 F.3d at 76-77);

d. pressured Intel to halt development of platform-level software. (FOF ¶ 94-100, 396, 404-406)(253 F.3d at 77-78);

e. forced ISVs to sign agreements which gave ISVs certain perquisites including the receiving Windows 98 betas, receiving Windows technical information and the right to use the Microsoft seal of approval in return for ISVs agreeing to use Microsoft's competing version of Java and/or ISVs agreeing to use Internet Explorer as the default browsing software. (FOF ¶¶ 339-340, 401)(253 F.3d at 75-76); and

f. disabled the ability to remove

Microsoft's Internet Explorer from Windows
and bundling Internet Explorer with Windows
for both the 95 and 98 versions. (FOF ¶ 159-
164, 170, 174-176, 192)(253 F.3d at 66-67).
See  Rule 56(d) Statement.


## ARGUMENT

### I. Issue Limitation Under Rule 16(c) and Partial Summary Judgment Under Rule 56 Are Valuable Procedural Tools For Collateral Estoppel

This Court is expressly empowered under Fed. R. Civ. Pro.
Rule 16(c) to make orders limiting the issues, claims and
defenses that may be presented at trial.

Further, one of the classic uses of the valuable procedural
tool of Fed. R. Civ. Pro. Rule 56(c) partial summary judgment,
is for a partial judgment based upon collateral estoppel or
issue preclusion. <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S.
322,325 (1979); <u>Rye v. U.S. Steel Min. Co., Inc.</u>, 856 F.Supp.
274 (E.D. Va. 1994)(District Court has considerable discretion
in deciding whether to grant summary judgment on the basis of
offensive collateral estoppel); <u>Gould v. Newton</u>, 802 F.Supp. 950
(W.D.N.Y.  1992)  ("[t]he  preclusive  effect  of  former
adjudication, whether termed res judicata ("claim preclusion")

-11-

or collateral estoppel ("issue preclusion") provides an appropriate basis for determination of a motion for summary judgment"); <u>Maryland v. Capital Airlines</u>, 267 F.Supp. 298 (D. Md. 1967) (recognizing a plaintiff is entitled to summary judgment on basis of collateral estoppel); <u>McCord v. Bailey</u>, 636 F.2d 606, 610-611 (D.D.C. Cir. 1980)(after "twice rais[ing] these issues and lost" at trial and appeal, plaintiff could not raise the claims in a new case) <u>Carr v. District of Columbia</u>. 646 F.2d 599, 60 (D.D.C. Cir. 1980)(granting collateral estoppel and stating "it would have been an inordinate waste of judicial resources for the District Court to retread the same ground.")[4] <u>Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.</u>, 553 F.Supp. 962, 965 (N.D. Ill. 1982)(concluding that a Rule 16 motion is the proper vehicle for seeking offensive collateral estoppel on individual issues as opposed to entire claims).

Collateral estoppel forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." <u>Ramsay v. INS</u>, 14

---

[4] "Issue preclusion applies to rulings of law as well as findings of fact." 18 <u>Moore's Federal Practice</u> § 132.02[5][a] (3d ed. 1999) at 132-66.

F.3d 206, 210 (4th Cir. 1994) (quotation omitted); <u>Virginia Hospital Association v. Baliles</u>, 830 F.2d 1308, 1311 (4th Cir. 1987).[5]

## II.    <u>All The Elements Of Collateral Estoppel Are Satisfied Here</u>

In <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322 (1979), the Supreme Court held that a plaintiff in a private action could use offensive issue preclusion to prevent a defendant from relitigating issues it had lost in an earlier proceeding.    The Fourth Circuit in <u>Polk v. Montgomery County</u>, 782 F.2d 1196, 1201 (4th Cir. 1986), set out the factors in determining whether offensive issue preclusion would apply as:

1.  The defendant to be estopped must have been a party to the first action;

2.  The issues in the prior litigation must be identical to the issues as to which estoppel is sought;[6]

---

[5] Plaintiffs need not demonstrate that they are "privies" to the government in the Government Action, but must only demonstrate that Microsoft "had a full and fair opportunity to litigate the issue in the previous forum." <u>Sedlack</u>, <u>supra</u>, 134 F.3d at 224.

[6] However, "[a] new contention is not necessarily a new issue.  If a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination

3. The issue to be precluded must have been actually litigated, necessary, material, and essential to the disposition in the prior case; and

4. The prior determination must be final.[7]

Parklane set out two additional factors addressing due process in offensive collateral estoppel: whether the plaintiff in the second action could easily have joined the earlier

---

of the issue is conclusive on the issue despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged." 18 Moore's Federal Practice § 132.02[2][c] at 132-35.

Thus, courts apply issue preclusion where evidence or arguments were available and could have been submitted previously but were not, regardless of the reason. "Evidence that is not the result of a different factual situation or changed circumstances, but is instead historical in nature and could have been admitted at the first trial if properly submitted, cannot be introduced in subsequent litigation of the same issue. Id. § 132.02[2][d] at 132-26.

[7]The articulation of the standards for collateral estoppel is very similar:

(1) the issue sought to be precluded is identical to one previously litigated;(2) the issue must have been actually determined in the prior proceeding;(3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;(4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. Sedlack v. Braswell Services Group, Inc., 134 F.3d 219, (4th Cir. 1998) (citing Ramsay).

action. 439 U.S. at 331 (SEC enforcement action); and whether the defendant had a procedural opportunity and an incentive to litigate vigorously in the first action.

Each of the aforementioned factors outlined by the Fourth Circuit and in Parklane supra, is present here.

## A. Microsoft Was The Sole Defendant In The Government Action

With respect to the first factor, Microsoft was the defendant in the prior government action brought on behalf of the United States by the United States Department of Justice.

## B. The Issues As To Which Collateral Estoppel Is Sought Herein Are Identical To The Issues Decided In The Government Action

With respect to the second factor, the issues as to which collateral estoppel is sought are identical to the issues decided in the Government Action.

### 1. The Same Legal Violation And Same Required Elements Are Present In Both Cases

The legal violation as to which collateral estoppel is sought herein is the same legal violation that was found against Microsoft in the Government Action: monopolizing the market for Intel-compatible personal computer operating systems in violation of Section 2 of the Sherman Act.

-15-

The offense of monopolization under Section 2 of the Sherman Act, has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966).

Those same two elements (and the issues relating thereto) were present in the Government Action and are present here. (In addition, the private plaintiff must prove impact and damages but summary judgment is not sought on those elements. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 487-88 (1977).)

### 2.  **The Same Relevant Market Is Present In Both Cases**

Further, the same factual relevant market that was alleged by the United States Department of Justice is alleged here: "the licensing of all Intel-compatible personal computer operating systems world-wide". See 87 F.Supp. 2d at 36; 253 F.3d at 51-54; C ¶¶ 1, 63-64.

### 3.  **The Same Monopoly Power Is Present In Both Cases**

Plaintiffs allege the same monopoly power in the relevant market that Microsoft was found in the Government Action to have

possessed.

> We begin by considering whether Microsoft possesses
> monopoly power, *see infra* Section II.A, and finding
> that it does, we turn to the question whether it
> maintained this power through anticompetitive means.
> Agreeing with the District Court that the company
> behaved anticompetitively, *see infra* Section II.B, and
> that these actions contributed to the maintenance of
> its monopoly power, *see infra* Section II.C, we affirm
> the court's finding of liability for monopolization.

253 F.3d at 51; See also United States v. E.I. du Pont de

Nemours & Co., 351 U.S.377, 391, 76 S.Ct. 994, 100 L.Ed.

1264(1956)("Monopoly power is the power to control prices or

exclude competition.").

### 4. The Same Anticompetitive Acts Are Present In Both Cases

As is set forth in the Statement of Facts, the same

anticompetitive acts are at issue in this case as were found in

the Government Action.  To the extent that a finding of fact in

the Government Action mirrors an express allegation in the

Consolidated Complaint, it obviously is at issue herein and

estoppel of Microsoft from re-litigation is appropriate.  To the

extent that a finding of fact is not mirrored by an express

allegation in the Consolidated Complaint, such Finding of Fact

still may be used to support plaintiffs' operating system

monopolization claim (Count I of Consolidated Complaint). See 18

Moore's Federal Practice, supra, Section 132.03[3][c] & n.76 (an

-17-

issue is "actually decided" for preclusion purposes "if the parties to the original action disputed the issue and the trier of fact decided it"); <u>see</u> FRCP Rule 8 (complaint is a short and plain statement of claim, and is not a lengthy recitation of every fact or contention that will be presented at trial to support and prove the claim).  Therefore, Microsoft should be precluded from re-litigating or otherwise contesting any of the Findings.

**C.  The Issues To Be Precluded Were Necessary And Central To Determination Of The Government Action**

In the Government Action, there could be no judgment against Microsoft unless it was determined that Microsoft had monopoly power in a relevant market, <u>viz</u>, the market for Intel-compatible personal computer operating systems (see 253 F.3d at 53, 55-56); and that Microsoft acquired or maintained its monopoly and monopoly power by anticompetitive, restrictive or exclusionary means. <u>Grinell</u>, supra.

Thus, the issues as to which collateral estoppel is sought had to be litigated and determined in the Government Action and were necessary and central to it.  Each of these issues had to be and was resolved against Microsoft.

**D.  Finality**

With respect to the fourth factor, finality, the

-18-

determination that Microsoft maintained a monopoly over Intel-compatible computer operating systems was a final determination of the District Court after a full trial on the merits.  This determination was affirmed by the D.C. Circuit Court of Appeals. And Microsoft's petition for certiorari to upset this affirmance was denied by the United States Supreme Court.

This is "final."  See <u>Fate v. Dixon</u>, 649 F.Supp. 551, 559 (E.D.N.C. 1986)(judgment affirmed by Fourth Circuit on appeal found to be final).

**E. <u>Plaintiffs Could Not Join The Government Action</u>**

As in <u>Parklane</u>, the plaintiffs in this case could not have joined the earlier government proceeding.  439 U.S. at 331.

**F. <u>Microsoft Had Every Incentive To Defend Itself In The Government Action</u>**

<u>Parklane</u> is again instructive here, as the Court noted that "in light of the serious allegations made in the SEC's complaint against the petitioners, as well as the foreseeability of subsequent private suits that typically follow a successful Government judgment, the petitioners had every incentive to litigate the SEC lawsuit fully and vigorously."  439 U.S. at 332.  <u>See also First Federal Savings & Loan v. Greenspan</u>, 1989 U.S.Dist. LEXIS 8964 at *6 (D.Md. July 18, 1989) (Motz, J.)

If anything, Microsoft had even more incentive to litigate

-19-

the Government Action than Parklane did. The Government Action threatened the very corporate existence of Microsoft (the remedies sought by the Government against Microsoft included the splitting up of Microsoft into two separate entities with one company retaining the windows operating system business and the other taking the rest of Microsoft's business, including software applications and internet software). Thus, Microsoft fully and vigorously opposed the government with experts, numerous witnesses and experienced trial and appellate counsel.

## **CONCLUSION**

For the foregoing reasons and authorities, and on all the prior proceedings had herein, plaintiffs' motion should be granted in all respects.

Dated: August 12, 2002

Respectfully submitted,

____/s/ Stanley Chesley
Stanley M. Chesley
Waite, Schneider, Bayless
 & Toll, PLLC
1513 Fourth & Vine Tower
NW
One West Fourth Street
Cincinnati, OH 45202

____/s/ Michael Hausfeld
Michael D. Hausfeld
Cohen, Milstein, Hausfeld
 & Chesley Co., L.P.A
    1100 New York Avenue,

    Suite 500
Washington, D.C.  20005

Co-Chairs

____/s/ Christopher Lovell
Christopher Lovell
Peggy Wedgworth

-20-

Lovell & Stewart, LLP
500 Fifth Avenue
Suite 5800
New York, N.Y.  10110

Ben Barnow                        Joseph Danis
Barnow & Goldberg                 Carey & Danis
1 N. LaSalle St., Ste. 4600       8182 Maryland Ave.
Chicago, IL 60602                 St. Louis, MO 63105




Robert Lieff                      Leonard B. Simon
Lieff Cabraser Heimann            Milberg, Weiss, Bershad,
 & Bernstein, LLP                  & Hynes & Lerach
275 Battery Street, Ste. 3000       600 West Broadway, Ste. 1800
San Francisco, CA 94111           San Diego, CA 92101




Alice McInerney                   Douglas Thompson
Kirby McInerney & Squire, LLP       Finkelstein, Thompson &
                                     Loughran
830 Third Avenue                  1055 Thomas Jefferson St., SW
New York, N.Y.  10022             Suite 6012
                                  Washington, D.C.  20007


                PLAINTIFFS' LEAD COUNSEL COMMITTEE

PLAINTIFFS' EXECUTIVE COMMITTEE

Gordon Ball
Law Offices of Gordon Ball
750 Nations Bank Center

550 Main Avenue
Knoxville, TN 37902


John J. Cummings III
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA 70130

Linda P. Nussbaum
Pomerantz, Haudek, Block, Grossman
& Gross LLP
100 Park Avenue, 26th Floor
New York, NY  10017-5516
3052

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
S.
Philadelphia, PA  19106


Robert A. Skirnick
Meredith Cohen Greenfogel, & Skirnick, P.C.
63 Wall Street
New York, NY  10005

Nicholas E. Chimicles
Chimicles & Tikellis LLP
361 West Lancaster
Avenue
One Haverford Centre
    Haverford, PA
    19041-0110

Dianne M. Nast
Roda & Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Lynn L. Sarko
    Keller Rohrback, LLP
1201 Third Avenue
Suite 3200
    Seattle, WA  98101-

David D. Shelby
Shelby & Cartee
    2956 Rhoades Circle,

Birmingham, AL  35205