# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE MICROSOFT CORPORATION | M.D.L. Docket No. 1332 |
| | Hon. J. Frederick Motz |
| LINDA CAMERON KLOTH, et al., | |
| Plaintiff, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

**CONSUMER PLAINTIFFS' REPLY MEMORANDUM TO
MICROSOFT'S MEMORANDUM CHALLENGING SPECIFIC
FINDINGS AS NOT NECESSARY TO THE COURT OF
APPEALS' 2001 DECISION IN *UNITED STATES V. MICROSOFT CORP.***

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Microsoft Concedes That Collateral Estoppel Is Applicable Here . . . . . . . . . . . . . . . . 4

The Specific Findings of Fact Contested By Microsoft Are Entitled To Preclusive Effect . . . . 10

Findings of Fact ¶ 78 (Middleware threats to the Operating System and Application Browser) 11

Findings of Fact ¶¶79-89 (Microsoft Tries To Dissuade Netscape From Developing
    Navigator As A Platform) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Findings of Fact ¶¶90-92 (Microsoft Retaliates Against Netscape By Withholding
    Technical Information) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Findings of Fact ¶¶93-132 (Microsoft's Anticompetitive Conduct In Response To The Middleware
    Threat). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Findings of Fact ¶¶149-155 (Web Browsers As Separate Products And How Microsoft Bound
    IE To Windows) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Findings of Fact ¶¶230-238 (Excluding Navigator From OEM Distribution Channels
    By Pressuring OEMs To Accept Certain Licensing Restrictions) . . . . . . . . . . . . . . . 17

Finding of Fact ¶379 (Causes For Harm On Netscape's Business) . . . . . . . . . . . . . . . . . . . 18

Findings of Fact ¶¶380-385 (Actual vs. Predicted Market Share For Netscape) . . . . . . . . . . . 19

Findings of Fact ¶¶389-393 (The Concept Of Incompatibility) . . . . . . . . . . . . . . . . . . . . . 19

Findings of Fact ¶¶397-398 (Microsoft's Response To The Sun Platform Threat
    By Excluding Netscape Navigator As Host) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Findings of Fact ¶¶402-403 (Exclusionary Agreements Identical To Unlawful First
    Wave Agreements) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Findings of Fact ¶¶408-412 (Effect Of Microsoft's Anticompetitive Conduct On Consumers) . . 22

Microsoft Is Wrong That Collateral Estoppel Is Inapplicable To Statements From The
    Court of Appeals' Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

## FEDERAL CASES

<u>Page</u>

*In re Microsoft Corp. Litigation*, No. MDL 1332, 2002 WL 31487658
  (D. Md. Nov. 4, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Levine v. McLeskey*, 164 F.3d 210 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McLendon v. Continental Group, Inc.*, 660 F. Supp. 1553 (D. N.J. 1987) . . . . . . . . . . . . . . . . .23

*New York  v. Microsoft*, No. 98-1233, 2002 WL 31439655
  (D.D.C. Nov. 1, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,18

*Ritter v. Mount St. Mary's College*, 814 F.2d 969 (4th Cir. 1987)  . . . . . . . . . . . . . . . . . . . . . 10

*Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190 (9th Cir. 1964) . . . . . . . . . . . . .23

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*United States v. Microsoft*, 84 F. Supp.2d 9 (D.D.C. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Microsoft*, 87 F. Supp.2d 30 (D.D.C. 2000)  . . . . . . . . . . . . . . . . . . . . . . 1, 14

*United States v. Microsoft*, 97 F. Supp. 2d 59 (D.D.C. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Microsoft*, 253 F.3d (D C Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Virginia Hosp. Association v. Baliles*, 830 F.2d 1308  (4th Cir. 1987)  . . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

Fed. R. Civ. P. 16(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Fed.. R. App. P. 28(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## PRELIMINARY STATEMENT

Consumer plaintiffs submit this memorandum in response to Microsoft's Memorandum Challenging Specific Findings As Not Necessary To The Court Of Appeals' 2001 Decision, dated November 20, 2002 ("Microsoft Mem."). As shown more fully below, Consumer plaintiffs agree with Competitor Plaintiffs Netscape Communications Corporation ("Netscape"), Sun Microsystems, Inc. ("Sun") and Be Incorporated, Inc. ("Be") that Microsoft has not provided the Court with sufficient reasons to reject collateral estoppel as to the findings of fact and appellate statements now at issue. As shown more fully below, it is Consumer plaintiffs' position that all of the findings of fact contested by Microsoft and at least 37 of the 39 statements of the D.C. Circuit court in United States v. Microsoft are entitled to collateral estoppel effect. Consumer plaintiffs also concur with and incorporate by reference herein, the legal authorities and arguments relied on and made by Competitor plaintiffs in their respective memoranda in response to Microsoft's Memorandum.

## INTRODUCTION

At the October 24, 2002 hearing, this Court heard the motions made by Consumer plaintiffs and various competitors of Microsoft under Fed. R. Civ. P. 16(c) to preclude Microsoft from relitigating 395 factual findings conclusively established against it in United States v. Microsoft Corporation, 84 F. Supp.2d 9 (D.D.C. 1999) (findings of fact), 87 F. Supp.2d 30 (D.D.C. 2000)(conclusions of law and judgment), and 97 F. Supp.2d 59 (D.D.C. 2000)(remedial order), aff'd in part, rev'd in part, and remanded in part, 253 F.3d 34 (D.C. Cir.), cert. denied, 120 S.Ct. 350 (2001)("the Government case"). Consumer plaintiffs and Competitor plaintiffs also moved under Rule 56 for partial summary judgment on the issue of Microsoft's liability as a monopolist under Section 2 of the Sherman Act.

Following oral argument, the Court, in its opinion dated November 4, 2002, (the "Nov. 4 Op."), granted plaintiffs' motions pursuant to Rule 16(c), concluding that preclusive effect should be given to findings of fact in the Government case and stating that "it is difficult to imagine a case in which it would be more appropriate to invoke collateral estoppel". November 4 Op. at 1, 7; 2002 WL 31487658 *1 (D.Md. November 4, 2002). The Court denied plaintiffs' motions for partial summary judgment. In ruling favorably for plaintiffs on the collateral estoppel question, the Court gave Microsoft "a final opportunity to challenge particular findings as not having been necessary to the judgment in the government case." Nov. 4 Op. at 5, 2002 WL 31487658 at *4.

In discussing whether findings were to be deemed "necessary" for collateral estoppel purposes, the Court specifically rejected Microsoft's argument that "necessary" means "indispensable" and stated that facts which are "supportive" of the prior judgment are entitled to collateral estoppel effect:

> The implication of Microsoft's reading of "necessary" is that in determining whether to give preclusive effect to facts found in a prior proceeding, the second court must inquire whether "but for" a particular finding, the judgment would have been rendered. If there were two grounds for a decision, preclusive effect could not be given to the facts underlying either. That clearly is not the law of the Fourth Circuit. See Ritter v. Mount St. Mary's College, 814 F.2d 986, 993 (4th Cir. 1987).
>
> **Moreover, in many cases, as here, no single fact can be said to have been a _sine qua non_ for the prior judgment. It cannot be, as Microsoft's position would also imply, that in such cases the doctrine of preclusion could not be applied.** To adopt such a rule would be to frustrate the accomplishment of the goals of efficiency and economy that the doctrine is designed to further. The requirement that a finding has been necessary to a prior judgment serves the important purpose of "prevent[ing] the incidental or collateral determination of a nonessential issue." Mother's Restaurant, Inc. v. Mamma's Pizza, Inc., 723 F.2d 1566, 1571-72 (Fed. Cir. 1983). But that purpose cannot be permitted to override the

2

doctrine of collateral estoppel itself, and it is sufficiently served by requiring that a specific finding be supportive of the prior judgment. See, e.g., Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002)("Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity."); Hoult v. Hoult, 157 F.3d 29, 32 (1st Cir. 1998); Syanon Church v. United States, 820 F.2d 421, 425 (D.C. 1987).[1] Nov. 4 Op. at 5-6, 2002 WL 31487658 *3. (Emphasis added).

This Court also held that:

> In this case it appears that **each of the 395 findings** as to which plaintiffs seek preclusive effect **supported** the Court of Appeals'

---

[1] In footnote 1 of its opinion this Court stated:

> It might also be noted that a trial court has the discretion to prevent the use of offensive collateral estoppel where its application would be "unfair." See, e.g., Parklane, 439 U.S. at 331. Thus, a court might not give preclusive effect to a particular finding even if that finding was supportive of the prior judgment if there was some reason to question whether the fact had been fully and fairly litigated - and subjected to appellate review - in the prior proceeding. Here, no such reason exists. Obviously, the government case against Microsoft was vigorously litigated on both sides, and, as I have noted previously, the Court of Appeals carefully reviewed the record to assure that Judge Jackson's findings were supported even though most of those findings were not challenged by Microsoft on appeal. Nov. 4 Op. at 6, Id. at *3. (Emphasis added).

Although Microsoft refers generally to the "unfairness"of certain findings (e.g., Findings 93-132, see Microsoft Mem. at 17), it does not offer any objection to specific language as unduly prejudicial or unfair and argues that any such arguments are for a later date and for consideration at the time evidence is to be presented to a jury. While this Court, at the October 24, 2002 hearing, raised the issue of whether certain facts that were necessary to the judgment might nonetheless need to be more "neutralized" when presented to a jury (see Oct. 24 Tr. at 127-129), that issue is not applicable here and it continues to be plaintiffs' position that Microsoft had the prior opportunity to contest the facts in the Government case in connection with its argument that Judge Jackson was "biased"– an argument rejected by the Court of Appeals and by the U.S. Supreme Court.

3

decision in the government case that Microsoft unlawfully maintained a monopoly to contest those findings it contends were not necessary to the judgment against it. Nov. 4 Op. at 6, 2002 WL 31487658 *4 (Emphasis added).

The Court also stated that "[if] a fact was necessary to the judgment against Microsoft on the monopoly maintenance claim, it is irrelevant that the fact also related to another claim on which Microsoft prevailed." Nov. 4 Op. at 5, id at 4. Also, that findings "which provide relevant background to Microsoft's anticompetitive acts . . . are entitled to preclusive effect. Nov. 4 Op. at 4.

### Microsoft Concedes That Collateral Estoppel Is Applicable Here

Microsoft previously asserted that none of the findings of fact in the Government case are entitled to any preclusive effect. Reversing its prior position, Microsoft now claims it does not challenge Findings of Fact Nos. 1-15, 16, 17-67, 99 (Microsoft Mem. at 17) and 197 other findings entered by the District Court (Microsoft Mem. at 1-2) as to which plaintiffs seek preclusive effect. In other words, Microsoft, based on its own count, now concedes that at least 263 of 356 findings of fact from Judge Jackson's opinion are entitled to preclusive effect in this action, including but not limited to Findings of Fact 1-15, 16, 17-67, 68-77, 99, 133-148, 156-229, 239-378, 386-388, 394-396, 399-401 and 404-407. See Microsoft Mem. at 1, 32.[2]

However, Microsoft argues that 93 other findings of fact by Judge Jackson for which plaintiffs seek preclusive effect are not entitled to any collateral estoppel effect. Microsoft asserts

---

[2] Although Microsoft purports to challenge a total of 93 findings, only 91 findings are apparently actually being contested. Microsoft concedes that Finding 99 was among the many findings cited by Judge Jackson for his conclusion that Microsoft possessed monopoly power (see Microsoft Mem. at 17) and also erroneously includes Finding 385 in its list of challenged findings when plaintiffs are not seeking preclusion for Finding 385.

4

these 93 findings were not "necessary" to support the D.C. Circuit's affirmance of the Section 2

monopoly maintenance claim on appeal, insofar as they were not, in Microsoft's view, connected

to the twelve anticompetitive acts listed in the D.C. Circuit's opinion which gave rise to liability

under Section 2. Microsoft Mem. at 9-10,13. Microsoft also contends that if a district court finding

was not cited in the D.C. Circuit's appellate opinion that it was not "necessary" to support the

judgment. Microsoft is wrong on the facts and the law. See cases set forth in Netscape's Rule 16

Motion For Preclusive Effect Of Factual Findings Conclusively Established In United States v.

Microsoft Corp., October 18, 2002 at 6, 7, incorporated by reference herein. Microsoft's position

is also logically inconsistent since Microsoft itself does not contest at least 143 findings for which

plaintiffs seek preclusion and which are also not explicitly mentioned by the D.C. Circuit.[3]

  Also to the extent Microsoft argues that facts not mentioned by the D.C. Circuit opinion were

not "necessary" to the Section 2 judgment on monopoly maintenance, it also ignores the fact that

Microsoft, failed to challenge many of Judge Jackson's findings on appeal, a fact noted by the Court

of Appeals several times in its opinion. As the Court of Appeals stated, Microsoft "fail[ed] to

challenge the District Court's factual findings, or to argue that these findings do not support the

court's conclusions....Microsoft neither points to evidence contradicting the District Court's findings

nor alleges that supporting record evidence is insufficient." Microsoft, 253 F.3d at 52. See also

Microsoft, 253 F.3d at 53 ("Again, Microsoft fails to challenge these findings"); Id. at 57 ("the

company does not challenge these findings"); Id. at 77 ("Microsoft does not deny the facts found by

the District Court"). Thus, the D.C. Circuit addressed only the limited issues and findings before

---

[3] See e.g., Findings 1, 3, 5, 8-14, 17, 67, 133-135, 146-148, 156-157, 166-169, 173, 177
and 185, 187-191, 194-198, 202, and 204-209.

it on appeal and was not required to address uncontested facts. <u>See</u> Fed. R. App. P. 28(a)(5). Again, the appellate court upheld all of Judge Jackson's Findings of Fact on appeal and found no evidence of "actual bias" against Microsoft.

Microsoft relies principally on the recent decision of Judge Kollar-Kotelly in *New York v. Microsoft Corporation,* 2002 WL 31439655 (D.D.C. November 1, 2002) to support its position. However, nothing in that decision bars this Court from applying collateral estoppel to the 91 findings of fact made by Judge Jackson that Microsoft actually contests here. Instead, Judge Kollar-Kotelly, after a 32 day trial on the remedies phase of the Government case, recognized that (i) all of the findings of fact in the Government case survived challenge on appeal; (ii) that such findings constituted the "law of the case"; and (iii) that the failure of the D.C. Circuit to make specific references to certain findings of fact made by Judge Jackson in its opinion did not mean, as Microsoft argued, that such findings were reversed by the D.C. Circuit or that they were otherwise not necessary to the prior judgment.

Justice Kollar-Kotelly specifically stated:

> **\*11** As this Court noted above, the inquiry on remand is fundamentally constrained and guided by the conclusions of the appellate court. The appellate court's conclusions, in turn, rely heavily upon the findings of fact entered by the district court following the liability trial. After a 76-day bench trial, *Microsoft,* 253 F.3d at 47, Judge Jackson entered 412 numbered paragraphs as his "Findings of Fact," *see Findings of Fact,* 84 F.Supp.2d 9. These findings provided the factual basis for the district court's ensuing conclusions of law, issued some four months later. ***See Microsoft,* 253 F.3d at 48.** **In considering Microsoft's challenge to the district court's factual findings, the appellate court applied the usual deference to the district court's factual conclusions and found no "clear error," see *id.* at 118. Additionally, the appellate court held that the district court's factual findings permitted meaningful appellate review.**

6

*****

Because all of the district court's factual findings survived challenge on appeal, they comprise the law of this case and may be relied upon during the remedy phase of this proceeding. Crocker, 49 F.3d at 739. Indeed, it would make little sense to proceed to craft a remedy in the absence of substantial reliance upon the factual foundation which underlies the liability entered in this case. Hence, the factual findings of the district court, like the conclusions of the appellate court, comprise the foundation upon which this court must construct a remedy. Still, the Court remains mindful of the vital distinction between factual findings, however adverse, and legal conclusions.
Id. at *11.

Justice Kollar-Kotelly further stated:

Microsoft acknowledges that the appellate court declined to address individually all of Judge Jackson's specific findings of liability . . . . Microsoft contends that the "acts condemned by Judge Jackson," but not specifically addressed by the appellate court, "apparently were the basis for his conclusion that 'Microsoft's conduct as a whole ... reinforces the conviction that [Microsoft] was predacious.' " Id. (quoting Microsoft, 87 F.Supp.2d at 44) (emphasis omitted) (alteration by Microsoft). Drawing further upon this rationale, Microsoft argues that the appellate court's reversal of the "course of conduct" liability determination implicitly reverses any of the district court's liability findings not specifically addressed by the appellate court.

While an attractive and simple resolution to a complex quandary, Microsoft's reasoning is flawed. In conflating all of Judge Jackson's remaining liability findings, Microsoft ignores the express holding of the appellate court. The appellate court determined to reverse the "course of conduct" liability on the grounds that the district court had *failed to identify* the acts sufficient to support its finding of liability: "[T]he District Court did not point to *any* series of acts, each of which harms competition only slightly but the cumulative effect of which is significant enough to form an independent basis for liability." Microsoft, 253 F.3d at 78 (emphasis added). Tellingly, the appellate court enumerated "the *only specific acts* " relied upon by the district court in assessing liability on a "course of conduct" theory. Id. (emphasis added) . . . . In this vein, the appellate court recounted that "the only specific acts" identified by the district court, namely "Microsoft's expenditures in promoting its

browser," were "not in themselves unlawful." _Id._ "Because the District Court identifie[d] no other specific acts as a basis for 'course of conduct liability,' " the appellate court reversed that liability determination. _Id._

> **In light of the basis for the appellate court's reversal on this point, it is antithetical to conclude that specific anticompetitive acts clearly described by the district court elsewhere in its conclusions of law are somehow reversed by the appellate court's rejection of the "course of conduct" finding of liability. . . . Because the appellate court declined to look beyond the particular acts enumerated by the district court in conjunction with its "course of conduct" analysis, there is no basis upon which this Court can conclude that, by reversing liability based upon a "course of conduct," the appellate court implicitly reversed findings of anticompetitive conduct entered by Judge Jackson elsewhere in his opinion.**
> Id. at *12.

Judge Kollar-Kotelly also recognized that although certain findings described in the Government case were "tenuously related" to liability and were not useful to the Court for purposes of crafting a remedy (id. at*52), that they nonetheless supported the Section 2 claim. Judge Kollar-Kotelly further recognized that the "causation" standard in formulating an antitrust remedy is different and more stringent for a divestiture than it is for lesser remedies like injunctive relief. She also stated that, contrary to Microsoft's assertions, the Court, could fashion a remedy for Microsoft's antitrust violations, which "exceeds the bounds of the exclusionary conduct," and is not limited to an injunction covering only the twelve acts the D.C. Circuit court specifically held to be anticompetitive. The Court could also extend its remedy to other related unlawful acts as well. Id. *13, *61.

Microsoft wrongfully equates the role of the Court in fashioning a remedy with the Court's discretion to apply collateral estoppel to findings and issues of fact.[4]  Judge Kollar-Kotelly's November 1 opinion was intended to resolve evidentiary issues regarding remedies and not to resolve questions of liability and issues of fact already determined.  In any event, Judge Kollar-Kotelly clearly recognized the "law of the case" in fashioning her remedy, which is clearly analogous to collateral estoppel here. Also, to the extent that the Court discussed liability, her statements support the application of collateral estoppel here.  Moreover, at no point did Judge Kollar-Kotelly criticize any of the previous findings of fact as unfair or prejudicial to Microsoft.[5]

Judge Kollar-Kotelly further rejected the analysis of one of Microsoft's economic experts, Dr. Kevin Murphy, who concluded "that Microsoft's anticompetitive conduct did not have

---

[4] Microsoft cites to no authority which expressly holds that the collateral estoppel effect of a prior judgment is limited to only the specific factual findings applied to craft the specific remedies adopted in the prior action.

[5] Judge Kollar-Kotelly noted:

> "On appeal, the D.C. Circuit deferred to Judge Jackson's factual findings, <u>Microsoft</u>, 253 F. 3d at 118, altered his findings of liability - affirming in part and reversing in part, and vacated the remedy decree. <u>Id</u>. at 46.  The appellate court remanded the cases to this Court with instructions to hold a "remedies specific" evidentiary hearing, <u>id</u> at 103, and to "fashion an appropriate remedy" in light of the revised liability findings, <u>id</u>. at 105.

> Judge Kollar-Kotelly indicated it was her "mandate" from the D.C. Circuit to "fashion a remedy appropriately tailored to the revised liability findings". 2002 WL 31439655, at *3 and not to reconsider issues already decided.  "The sole issue remaining in the case concerns a remedy for Microsoft's violation of § 2 of the Sherman Act, rather than a reassessment of liability, the relevant portions of the appellate opinion consist of that court's discussion of Section 2 liability". <u>Id</u>.

9

significant effect on Navigator, Java or Microsoft's position in the market for Intel-compatible PC operating systems." Id. at *63, finding such expert's conclusions "are factually in conflict with the conclusions of the appellate court", and undercutting the "inference of causation necessary to the appellate court's imposition of liability." Id. Microsoft seeks to attack findings of fact here that are directly linked to such anticompetitive conduct. See e.g., Findings of Fact Nos. 90-92, 230-238, 389-393. Such findings are entitled to preclusive effect. Ritter v. Mount St. Mary's College, 814 F.2d 986, 983 (4th Cir. 1987), ("This case features...the same parties, the same issues, the same facts . . .appellant has had a full and fair opportunity to litigate....To decide that collateral estoppel should not obtain with regard to this finding of fact simply because this court, in its prior decision on this suit, specifically mentioned only one element of [a claim] in its affirmance of the lower court would constitute an abandonment of serious judicial reasoning and decision-making in exchange for the wooden application of judge-made rules designed to protect litigants in circumstances where they need protection ....").

## The Specific Findings of Fact Contested By Microsoft Are Entitled To Preclusive Effect

In addition to the explanations already provided by plaintiffs as to why the 93 findings specifically objected to by Microsoft (actually 91 findings by plaintiffs' count, see f.n. 2, supra.) were necessary to the judgment in the Government case,[6] plaintiffs discuss in further detail below why preclusive effect should be given to these findings. For the Court's convenience, the specific findings of fact from Judge Jackson's opinion for which Microsoft now opposes preclusive effect for are set forth in Plaintiffs' Exhibit B attached hereto.

---

[6] See Appendix A to Sun's Reply Memorandum of Law dated October 18, 2002, annexed hereto as Exhibit A, which Consumer plaintiffs have adopted by reference herein and at oral argument.

Under Section 2 of the Sherman Act, monopoly maintenance has two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. See Microsoft, 253 F.2d at 49 (citing United States v. Grinnell Corp., 384 U.S. 563, 570-571 (1966)). To the extent that various findings contested by Microsoft herein support either of these events, they are "necessary" to the prior judgment.

Nonetheless, Microsoft improperly attempts to "cherry pick" particular facts isolating them from the full context in which they are being made and denying that they actually support the elements of a Section 2 claim. However, when such findings are reviewed in relation to the other findings, including ones which Microsoft does not contest, they clearly support the Section 2 liability claims. Indeed, these findings either address at least one of the twelve bases for holding Microsoft liable under Section 2 or provide the necessary background and predicate facts to understand Microsoft's conduct as a monopolist, the nature of its violations and its anticompetitive intent upon which the D.C. Circuit affirmed Section 2 liability under the Sherman Act. See Netscape Mem. at 9; see also Be's Mem. at page 2, referencing Finding of Fact 67 which incorporates by reference all of subsequent findings regarding Microsoft's conduct towards third parties.

**Finding of Fact ¶78 (Middleware threats to the Operating System and Applications Browser)**

Finding 78 specifically discusses several middleware threats which Microsoft considered as threats to its operating system and the applications barrier to entry, in addition to threats posed by Netscape Navigator and Sun's Java implementation. These middleware threats included Lotus Notes, which contained a graphical interface common across multiple operating systems, exposed a set of APIs to software developers, and like Netscape's Navigator, *"served as a distribution vehicle*

11

*for Sun's Java runtime environment"*, an alternative platform to Windows. (Emphasis added). Also,

Intel's Native Signal Processing ("NSP") software, which "interacted with microprocessors

independently of the operating system and exposed APIs directly to developers of multimedia

content." Also, Apple's and RealNetwork's multimedia playback technologies, which could run on

several platforms, including Windows and MacOS, and also expose APIs to content developers.

Judge Jackson held that "Microsoft feared all these technologies because they facilitated the

development of user-oriented software that would be indifferent to the identity of the underlying

operating system." [7]

Although Microsoft treats this finding in isolation, plaintiffs grouped it with other findings

in ¶¶ 68-78, which specifically discuss the platform threat of middleware to Microsoft. Plaintiffs

previously explained that collectively:

> "These findings were necessary to establish anticompetitive intent or
> actions in furtherance of monopoly maintenance. They provided
> necessary background information on the middleware threat to
> Microsoft's operating systems applications barrier to entry, and in
> particular the threat posed by Netscape's Navigator and Sun's Java
> technologies. These findings further supported a determination that
> Microsoft understood and responded to these threats. See Appendix
> A to Sun's Reply Mem., Exhibit A hereto.

---

[7] Judge Jackson pointed out in his Conclusions of Law that "early on Microsoft recognized middleware as the Trojan horse, that once having, in effect, infiltrated the applications barrier, could enable rival operating systems to enter the market for Intel-compatible PC operating systems unimpeded. 87 F. Supp.2d at 38. Simply put, middleware threatened to demolish Microsoft's monopoly power. Alerted to the threat, Microsoft strove over a period of approximately four years to prevent middleware technologies from fostering the development of enough full-featured cross-platform applications to erode the applications barrier . . . . Id. To the extent that the Court of Appeals recognized that the Section 2 claim against Microsoft is based on Microsoft's maintenance of monopoly power by its efforts to suppress middleware's threats to its operating system monopoly, and to prevent the erosion of the applications barrier to entry, the findings of fact with respect to these various kinds of middleware fully support the judgment under Section 2.

Microsoft's position that these middleware threats were not part of any liability determinations is contrary to the record. Indeed, in the remedies phase of the case, which involved specific remedial rulings on middleware, Judge Kollar-Kotelly conceded that although liability findings of the Government case "primarily concern" Microsoft's efforts to compete with two specific middleware products", i.e., Netscape Navigator and Java, 2002 WL 31439655 at * 26, these other nascent middleware technologies had played a role, although limited, in the liability findings. Id. at *18 . Judge Kollar-Kotelly also held that merely because the D.C. Circuit Court did not refer specifically to a finding in its appellate decision, that it did not mean that such finding was reversed. Microsoft, 2002 WL 31439655 at *12. Accordingly, there is no reason to disallow preclusion for FF 78, which should be given preclusive effect along with the related facts in ¶¶ 68-77.

### Findings of Fact ¶¶79-89 (Microsoft Tries To Dissuade Netscape From Developing Navigator As A Platform)

Microsoft again selectively excises facts that plaintiffs grouped together as ¶¶ 79-92. These findings collectively relate to the platform threat to Microsoft and Microsoft's response to the browser threat from Netscape. Plaintiffs previously argued:

> Microsoft undertook an effort to persuade Netscape not to develop Navigator as a platform, and these findings were necessary to the Court's determination that Microsoft actively maintained the applications barrier to entry through anticompetitive acts. These findings revealed Microsoft's unlawful design against the threat posed by Navigator to its PC operating systems monopoly. See Appendix A to Sun's Reply Mem., Exhibit A hereto.

Although the Court ultimately rejected findings 79-89 as proof of Microsoft's *attempted monopolization* of the browser market, Judge Jackson still found that these facts supported the first

13

element of an attempted monopolization claim, i.e., "(1) that the defendant has engaged in predatory or anticompetitive conduct." U.S. v. Microsoft, 87 F. Supp. 2d 30, *45 (D.D.C. 2000). Judge Jackson also held that in a Section 2 case for monopoly maintenance

> "Proof that the defendant's conduct was motivated by a desire to prevent other firms from competing on the merits can contribute to a finding that the conduct has had, or will have, the intended, exclusionary effect." Id. at * 37, n 1.

Although the Court of Appeals rejected the attempted monopolization claim, this Court has stated "[I]f a fact was necessary to the judgment against Microsoft on the monopoly maintenance claim, it is irrelevant that the fact also related to another claim on which Microsoft prevailed." Nov. 4 Op. at 5. The D.C. Circuit has confirmed the anticompetitive nature of Microsoft's conduct in its browser campaign against Netscape. Specifically, it recognized that Microsoft's "efforts to gain market share in one market (browsers) served to meet the threat to Microsoft's monopoly in another market (operating systems) by keeping rival browsers from gaining the critical mass of users necessary to attract developer attention away from Windows as the platform for software development". U.S. v. Microsoft, 253 F.3d at *60. This clearly supports a Section 2 monopoly maintenance claim. Thus, to the extent that the findings in ¶¶79-89 show Microsoft was engaging in anticompetitive conduct towards rivals like Netscape in the browser market so as to preserve its monopoly in the operating systems market, such findings are not superfluous or "mere context" as Microsoft claims, but are directly relevant to a Section 2 claim.


**Findings of Fact ¶¶90-92 (Microsoft Retaliates Against Netscape By Withholding Technical Information**

14

As stated above, plaintiffs previously argued that these findings, dealing with Microsoft's intentional withholding of technical information and assistance to Netscape, including the withholding of certain developer tools, and only after Microsoft tried to get Netscape to drop the development of its Navigator browser, were "necessary" to the prior judgment for the same reasons as stated with respect to ¶¶79-89, *supra*. Microsoft tries to separate out these findings which were grouped together by Judge Jackson under the heading called "Microsoft's Response to the Browser Threat". A Netscape has argued, findings 90-92 demonstrate that Microsoft had the monopoly power, and hence the ability, to cause damage to Netscape's business. Additionally, Findings 90-92 provide relevant background regarding Microsoft's perception of Netscape as a platform threat and the steps that Microsoft took to respond to that threat. See November 4 Op. at *4 (stating that findings which "provide relevant background to Microsoft's anticompetitive acts" are entitled to "preclusive effect"); see also Netscape Reply Mem. at 8 (discussing how Findings 90-92 relate to the platform threat posed by Netscape). Finally, to the extent Microsoft also challenges Findings 90-92 on the basis of Judge Kollar-Kotelly's statement that "Judge Jackson did not ascribe any liability" for these findings, (see Microsoft Mem. at 16), this Court has already stated, a finding need only describe an act that supports liability in order to be necessary; it need not actually describe an anticompetitive act. See Nov. 4 Op. at *6.

**Findings of Fact ¶¶93-132 (Microsoft's Anticompetitive Conduct In Response To The Middleware Threat)**

These findings concern Microsoft's anticompetitive actions with respect to middleware, particularly with (i) Intel regarding NSP software, (ii) Apple regarding QuickTime, (iii) Real Networks' regarding streaming media software, and (iv) IBM. Plaintiffs previously argued with respect to these findings that:

15

> The determination that Microsoft interfered (or attempted to interfere) with the software development of Intel, Apple, RealNetworks and IBM provided necessary evidentiary support to the finding that Microsoft intended to buttress the applications barrier to entry by targeting all forms of competition that had the potential to support alternative platforms. These findings were necessary to establish Microsoft's anticompetitive intent and actions in furtherance of monopoly maintenance. These findings were also necessary to a finding of market power. See Appendix A to Sun's Reply Mem. at 3, Exhibit A hereto.

Finding 93, which highlights the facts that follow in Findings 94-132, specifically states that Microsoft's interactions with these firms "demonstrate that it is Microsoft's corporate practice to pressure other firms to halt software development that either shows the potential to weaken the applications barrier to entry or competes with Microsoft's most cherished software products." Judge Jackson further recognized that "[t]he same ambition that inspired Microsoft's efforts to induce Intel, Apple, RealNetworks and IBM to desist from certain technological innovations and business initiatives – namely the desire to preserve the applications barrier – motivated the firm's June 1995 proposal that Netscape abstain from releasing platform-level browsing software for 32 bit versions of Windows". See Microsoft, 87 F.Supp.2d at 39. Microsoft's dealings with these other firms which had the potential, like Netscape, to break down the applications barrier, as described in Paragraphs 93-132, are thus entitled to preclusive effect.

Microsoft further concedes that FF 99 is entitled to collateral estoppel effect and was cited by Judge Jackson in support of his conclusion that Microsoft had monopoly power, and was not overturned by the Court of Appeals. Microsoft Mem. at 17.

**Findings of Fact ¶¶149-155 (Web Browsers As Separate Products And How Microsoft Bound IE To Windows)**

16

Microsoft parses out FF ¶¶149-155 from ¶¶149-170 and 173-198 which were previously grouped together by plaintiffs. Plaintiffs previously argued that ¶¶149-170 and 173-198 were necessary because:

> These findings develop the economic and functional role of browsers separate from the operating systems, and were necessary to a showing of the lack of efficiencies inherent in the commingling of the code of Windows with the code of Internet Explorer. These findings were necessary to support Microsoft's anticompetitive intent and actions in furtherance of monopoly maintenance. See Appendix A to Sun's Reply Mem. at 3.

Microsoft mistakenly argues that these findings are not entitled to preclusive effect because they related only to the tying claim, which the D.C. Circuit vacated and remanded. Microsoft Mem. at 18-20. However, the Court of Appeals specifically acknowledged that the tying findings in ¶¶149-154 support the Section 2 claim, stating "the facts underlying the tying allegation substantially overlap with those set forth in Section II.B in connection with the §2 monopoly claim." Microsoft, 253 F.3d at 84. Further, Judge Kollar-Kotelly made reference to Finding 150 as "fundamental to the 'commingling finding' by the district court and subsequent affirmance" by the D.C. Circuit. Microsoft, 2002 WL 31439655 at *69; id. at *152 (stating that because of this separation of functionality "the district and appellate courts were able to ascribe liability to Microsoft for its act of commingling.")

**Findings of Fact  ¶¶230-238 (Excluding Navigator From OEM Distribution Channels By Pressuring OEMs To Accept Certain Licensing Restrictions)**

Plaintiffs previously argued that with respect to Findings 230-238:

> "the Court found that Microsoft used incentives and threats to induce individual OEMs to promote Internet Explorer and exclude Navigator. These findings were necessary to establish Microsoft's anticompetitive intent and actions in further of monopoly

maintenance." <u>See</u> Appendix A to Sun's Reply Mem. at 4, Exhibit
A hereto.

They also support the monopoly power finding and demonstrate how Microsoft used its

market power to strong arm customers without losing business. Although Microsoft claimed at the

remedies trial that Findings of Fact ¶¶ 230-238 were reversed on appeal, Judge Kollar-Kotelly

disagreed[8], <u>Id.</u> at *12, and acknowledged that Microsoft had failed to appeal these specific factual

specific findings as to the OEMs. Since Microsoft failed to appeal these findings, it has conceded

them. <u>See Microsoft</u>, 87 F.Supp. 2d at 39.

**<u>Finding of Fact ¶379</u> (Causes For Harm On Netscape's Business)**

Plaintiffs previously grouped FF ¶379 with FF ¶¶ 377-384 and explained how these were

collectively necessary to the judgment.  Plaintiffs previously stated:

> ¶¶377-84. Citing an internal Microsoft e-mail pronouncing that "the
> browser battle is close to over," the Court found that Microsoft
> intended to, and did, forestall Netscape becoming a serious threat to
> the applications barrier to entry.   The Court also found that
> Netscape's efforts to attract developer interest in its APIs would face
> considerable difficulty in the future, since Internet Explorer's
> installed base was larger and growing faster - largely because of
> Microsoft's anticompetitive acts. Thus, Microsoft had succeeded in
> relegating Netscape to more costly and less effective methods of
> distributing and promoting its browsing software.  The Court also
> found that AOL was unlikely to revive a middleware threat through
> Navigator, and that Microsoft had succeeded in forestalling, for
> several years, any plan to make Navigator into a platform that could
> threaten the applications barrier to entry.  The Court found that
> Microsoft intended to ensure that if and when full-featured server-

---

[8] Judge Kollar-Kotelly stated: "Because the appellate court declined to look beyond the
particular acts enumerated by the district court in conjunction with its course of conduct analysis,
there is no basis upon which this Court can conclude that, by reversing liability based upon a
'course of conduct', the appellate court implicitly reversed findings of anticompetitive conduct
entered by Judge Jackson elsewhere in his opinion." *New York v. Microsoft*, 2002 WL 31439655
at *12-13.

> based applications become prevalent on the Web, the number of them
> relying on middleware APIs would be "too few to attenuate the
> applications barrier to entry." These findings were necessary to
> establish Microsoft's anticompetitive intent and actions in furtherance
> of monopoly maintenance. See Appendix A to Sun's Reply Mem. at
> 5, Ex., A hereto. ____

This finding, which shows how Microsoft used its monopoly power to "ensur[e] that the firms comprising the channels that lead most efficiently to browser usage distributed and promoted Internet Explorer to the virtual exclusion of Navigator" and (2) "defray the massive costs it was undertaking in giving away free copies of Internet Explorer by licensing Windows", is entitled to preclusive effect.

### Findings of Fact ¶¶380-385 (Actual vs. Predicted Market Share For Netscape)

_____These findings concern Microsoft's agreement with AOL, the result of which was to favor Microsoft's Internet Explorer and preclude Netscape's Navigator from becoming a platform that could threaten the applications barrier to entry. Plaintiffs incorporate by reference herein the argument of competitor plaintiffs with respect to these findings.

### Findings of Fact ¶¶389-393 (The Concept Of Incompatibility)

_____These findings were included under Judge Jackson's findings entitled "Microsoft's Response to the Threat Posed By Sun's Implementation of Java". Plaintiffs previously argued that these findings were necessary because:

> ¶¶389-393. The Court found that Microsoft refused to cooperate with
> Sun, in an effort to hinder consumer choice. The Court specifically
> found that incompatibility with Sun's Java Virtual Machine ("JVM")
> was the intended result of Microsoft's development of a Windows-
> centric JVM, and these findings were necessary to the Court's
> determination that Microsoft took anticompetitive steps to interfere
> with the development and distribution of Sun's cross-platform Java
> technology, which it viewed as a threat to the applications barrier to
> entry.

19

Plaintiffs also note that, contrary to what Microsoft suggests, findings 392 to 393 in particular do not concern Microsoft's development of a JVM ("Java Virtual Machine") incompatible with the one developed by Sun which the Court did not find was a basis for liability, but arguably deal with anticompetitive tactics engaged in by Microsoft to deceive Java developers, which deception the Court of Appeals found violated Section 2.

**Findings of Fact ¶¶397-398 (Microsoft's Response To The Sun Platform Threat by Excluding Netscape Navigator As Host)**

Plaintiffs previously explained that these findings of fact were "necessary" as follows:

> ¶397. The Court found that Microsoft contributed to Netscape's emerging inability to afford the engineering costs necessary to continue bundling up-to-date Sun-Compliant JVMs with Navigator, and this finding was necessary to the Court's determination that Microsoft was actively maintaining its monopoly through anticompetitive acts.

> ¶398. The Court found that the presence of Microsoft's implementation of the Java runtime on every Windows PC and the decreasing availability of Navigator as a host of a Sun-compliant runtime induced developers to use Microsoft's developer tools. Due to deliberate design decisions in Microsoft's developer tools aimed at ensuring that Java developers would rely on Windows-specific technology, more Java applications would rely on these Windows-specific technologies and thus not be portable. This finding was necessary to the Court's determination that Microsoft took anticompetitive steps to interfere with the development and distribution of Sun's cross-platform Java technology, which it viewed as a threat to the applications barrier to entry. See Appendix A to Sun's Reply Mem. at 6, Ex. A hereto.

Finding 397 provides relevant background relating to incompatibility issues that supported Section 2 liability. Explaining incompatibility helped to show how Microsoft deceived developers into using Microsoft's version of Java, instead of Sun's.

Finding 398 supports the determination that Microsoft acted anticompetitively to interfere with the development and distribution of Sun's cross-platform Java technology and also provides background on incompatibility.  They are thus relevant to Section 2 liability.

**Findings of Fact ¶¶402-403 (Exclusionary Agreements Identical To Unlawful First Wave Agreements**

These findings deal with two other agreements that had the same unlawful exclusionary terms as the first Wave Agreements.  Microsoft did not appeal Section 2 liability with respect to these agreements and again, cannot claim that they are not entitled to preclusive effect if the D.C. Circuit did not specifically refer to them.

Plaintiffs previously explained that these findings of fact were necessary as follows:

> ¶402.  The Court found that at least one agreement provided for an ISV being required to exclusively use Microsoft's JVM, and this finding was necessary to the Court's determination that Microsoft took anticompetitive steps to interfere with the development and distribution of Sun's cross-platform Java technology, which it viewed as a threat to the applications barrier to entry.

> ¶403.  The Court found that Microsoft extracted a commitment from RealNetworks to ensure that its player primarily used Windows-specific Java technology, rather than analogous Sun or Netscape interfaces, and this finding was necessary to the Court's determination that Microsoft was actively maintaining its monopoly through anticompetitive acts. See Appendix A to Sun's Reply Mem. at 6,  Ex. A hereto.

Judge Kollar-Kotelly held that the appellate court determined that "the record indicates that Microsoft's deals with the major ISV's had a significant effect upon JVM promotion, without procompetitive justification."  2002 WL 31439655 at *8, quoting 253 F.3d at 76.  Although not technically classified as a "first wave agreement", the agreement in FF 402 required an ISV to use Microsoft's JVM exclusively and clearly is the type of exclusive agreement condemned by the court.

With respect to FF 403, Judge Jackson criticized Microsoft's dealings with RealNetworks (FF78)

and Judge Kollar-Kotelly held this was a basis, in part for liability. <u>See</u>

2002 WL 37439655 at *18, *26.

**<u>Findings of Fact ¶¶408-412</u> (Effect Of Microsoft's Anticompetitive Conduct on Consumers)**

Plaintiffs previously explained that these Findings of Fact were necessary as follows:

> ¶¶408-409. The Court found that through Microsoft's anticompetitive behavior aimed at protecting the applications barrier to entry, and hence its monopoly power, from middleware threats such as Netscape's Navigator and Sun's Java technology, consumers were directly harmed in ways that were both immediate and easily discernible, and these findings were necessary to the determination pertaining to the lack of efficiencies inherent in Microsoft's monopoly maintenance.

> ¶410. The Court found that Microsoft's pressure on Intel to drop its development of NSP platform-level software not only had no pro-competitive justifications, but also worked direct harm on consumers; this finding was necessary to the determination pertaining to the lack of efficiencies inherent in Microsoft's monopoly maintenance.

> ¶411. The Court found that Microsoft consistently "hobbled" attempts at innovation that might compete effectively with Microsoft, such as Sun's Java technology and Netscape's Navigator; this finding was necessary to the determination pertaining to the lack of efficiencies inherent in Microsoft's monopoly maintenance.

> ¶412. The Court cited Microsoft's "self-interest" as the basis for its evident desire to harm any firm that insists on pursuing initiatives that could intensify competition against a core product, even if such competition would be helpful to consumers, and this finding was necessary to the Court's determination that Microsoft was actively maintaining the applications barrier to entry through anticompetitive acts. <u>See</u> Appendix A to Sun's Reply Mem. at 7, Ex. A hereto.

22

Findings of Fact 409-412 in particular discuss how Microsoft's anticompetitive conduct, which was designed to exclude competitors and protect the applications barrier to entry, also harmed consumers. While the full extent of damages and injuries to consumers were not a required element of the Government's case, the Court of Appeals specifically held that illegal monopolization necessarily includes antitrust injury to consumers and thus, these findings as to consumer harm are clearly part of the record supporting Microsoft's liability. See Microsoft, supra, 253 F.3d at 58, 65.

**Microsoft Is Wrong That Collateral Estoppel Is Inapplicable To Statements From The Court of Appeals' Opinion**

At the October 24 hearing, consumer plaintiffs joined with Competitor plaintiffs and took the position that 39 statements from the Court of Appeals' opinion identified in Appendix A to Sun's Reply Memorandum (see Exhibit A hereto) and in Appendix 1 supplementing Appendix A, should be given preclusive effect. Plaintiff concurs with Sun and Be, Inc.'s revised position that 37 of these statements (excluding the statements identified as 5 and 27 in Sun's Appendix 1) are entitled to collateral estoppel effect, plus the additional statement referred to in Netscape's memorandum that was not included on the original list of appellate statements in Appendix A.[9]

_____

[9] That additional statement, appearing at 253 F.3d *6, is as follows:

"The District Court concluded that the first license restriction – the prohibition upon the removal of desktop icons, folders, and Start menu entries – thwarts the distribution of a rival browser by preventing OEMs from removing visible means of user access to IE. Id. § 203. The OEMs cannot practically install a second browser in addition to IE, the court found, in part because '[p]re-installing more than one product in a given category . . . can significantly increase an OEM's support costs, for the redundancy can lead to confusion among novice users.' Id. § 159; see also id. § 217. That is, a certain number of novice computer users, seeing two browser icons, will wonder which to use when and will call the

(continued...)

23

At the October 24 hearing, Professor Arthur Miller argued for plaintiffs that collateral

estoppel was applicable to both the findings of fact in Judge Jackson's opinion and to the findings

of fact and conclusions of law affirmed by the D.C. Circuit Court.   Referring to his own treatise on

Federal Practice and Procedure and to the Fourth Circuit's decision in Ritter, supra, Professor Miller

stated that:

> "Both say that anything that an appellate court examines and accepts
> is worthy of collateral estoppel.  And that's in the Ritter case.  I think
> Ritter stands for that.  It was one of the indications that the Fourth
> Circuit is rather generous in its approach.
>      In Ritter, . . . . you get a clear indication that in this circuit, if
> the appellate court has the comfort level to accept a finding then in
> the second action the second court gives it collateral estoppel effect."
> (Oct. 24, 2002, Hearing Transcript at 19-20).

Professor Miller also pointed out that "you can have issue preclusion on something as big as

a claim, smaller an issue, and even smaller than that you can have issue preclusion on a single fact."

See Oct. 24, 2002 Hearing Transcript at 12.   Accordingly, collateral estoppel is not limited

exclusively to fact findings  by a district court but  includes findings and conclusions  of law

affirmed by appellate courts as well. See Virginia Hospital Association v. Baliles, 830 F.2d 1308,

1311 (4th Cir. 1987)("The doctrine of collateral estoppel precludes relitigation of issues of fact or

law..."); 18 C.Wright, A. Miller & E. Cooper, Federal Practice. & Procedures, Juris.2d § 4421

(2002); Levine v. McLeskey, 164 F.3d 210 (4th Cir. 1998) (preclusion is limited to matters actually

decided on appeal). See e.g. Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190 (9th Cir.

1964)(findings of fact and conclusions of law affirmed by appellate court were admissible under

---

[9](...continued)
>      OEM's support line.  Support calls are extremely expensive and, in
> the highly competitive original equipment market, firms have a
> strong incentive to minimize costs.  Id. § 210."

24

Section 5(a) of the Clayton Act as *prima facie* evidence supporting plaintiffs' antitrust violations);

*McLendon v. Continental Group, Inc.*, 660 F. Supp. 1553 (D. N.J. 1987) (Third Circuit's findings

and conclusions were entitled to collateral estoppel effect and are not independent alternate grounds;

however "even if the holdings are considered as alternative grounds, the Restatement ....states that

alternative holdings on appeal are "necessary" to judgment and therefore preclusive. Restatement

(Second) of Judgments ¶ 27, comment o (1980)); *In re Dalkon Shield Punitive Damages Litig.*, 613

F. Supp. 1112, 1117 (E.D. Va. 1985)(when a finding in the first instance was reviewed on appeal,

the appellate finding was entitled to preclusive effect.)

## CONCLUSION

For all of the foregoing reasons, Consumer plaintiffs' motion for preclusion under Rule 16(c)

should be given to all of the Findings of Fact and appellate court statements referenced herein.

Dated: New York, New York
       December 6, 2002

                                 Respectfully submitted,

/s/ Stanley Chesley                     /s/ Michael Hausfeld
Stanley M. Chesley                  Michael D. Hausfeld
Waite, Schneider, Bayless           Cohen, Milstein, Hausfeld
 & Chesley                        & Toll, PLLC
1513 Fourth & Vine Tower         1100 New York Avenue, NW
One West Fourth Street             Suite 500
Cincinnati, OH 45202             Washington, D.C. 20005

                       Co-Chairs
                    /s/ Christopher Lovell
                   Christopher Lovell
                   Jody Krisiloff
                   Peggy Wedgworth
                   Lovell Stewart Halebian LLP
                   500 Fifth Avenue
                   Suite 5800
                   New York, N.Y. 10110

PLAINTIFFS' LEAD COUNSEL COMMITTEE

Ben Barnow
Barnow & Goldberg
1 N. LaSalle St., Ste. 4600
Chicago, IL 60602

Robert Lieff
Lieff Cabraser Heimann
& Bernstein, LLP
275 Battery Street, Ste. 3000
San Francisco, CA 94111

Alice McInerney
Kirby McInerney & Squire, LLP
830 Third Avenue
New York, N.Y. 10022

Joseph Danis
Carey & Danis
8182 Maryland Ave.
St. Louis, MO 63105

Leonard B. Simon
Milberg, Weiss, Bershad,
 & Hynes & Lerach
600 West Broadway, Ste. 1800
San Diego, CA 92101

Douglas Thompson
Finkelstein, Thompson & Loughran
1055 Thomas Jefferson St., SW
Suite 6012
Washington, D.C. 20007

26

PLAINTIFFS' EXECUTIVE COMMITTEE

Gordon Ball
Law Offices of Gordon Ball
750 Nations Bank Center
550 Main Avenue
Knoxville, TN 37902

John J. Cummings III
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA 70130

Linda P. Nussbaum
Pomerantz, Haudek, Block, Grossman
& Gross LLP
100 Park Avenue, 26th Floor
New York, NY 10017-5516

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Robert A. Skirnick
Meredith Cohen Greenfogel, & Skimick, P.C.
63 Wall Street
New York, NY 10005

Nicholas E. Chimicles
Chimicles & Tikellis LLP
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041-0110

Dianne M. Nast
Roda & Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Lynn L. Sarko
Keller Rohrback, LLP
1201 Third Avenue
Suite 3200
Seattle, WA 98101-3052

David D. Shelby
Shelby & Cartee
2956 Rhoades Circle, S.
Birmingham, AL 35205

27