UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Kloth* v. *Microsoft Corp.,* No. 1:00cv02117 | MDL Docket No. 1332<br>Hon. J. Frederick Motz |

## MICROSOFT'S MOTION IN LIMINE
## TO EXCLUDE EVIDENCE REGARDING DELIBERATE
## INCOMPATIBILITIES BETWEEN WINDOWS AND DR DOS

Defendant Microsoft Corporation hereby moves this court in limine, before trial and selection of a jury, for an order prohibiting plaintiffs and their counsel from mentioning, referring to, commenting upon, questioning witnesses concerning or otherwise introducing into evidence any and all evidence purporting to show that Microsoft employees created deliberate incompatibilities between Windows and DR DOS, so that Windows would not run properly on DR DOS.

This motion is made on the grounds that (1) the evidence at issue is irrelevant and immaterial to any issue in plaintiffs' case; and (2) admission of the evidence at issue would be improper and prejudicial to Microsoft, and substantially outweigh any probative value it might have.

The reasons for this motion are set forth in Microsoft's Memorandum in Support of Its Motion in Limine to Exclude Evidence Regarding Deliberate Incompatibilities Between Windows and DR DOS, and in the exhibits submitted therewith.

Dated:  June 6, 2003

*Of Counsel*:

Charles B. Casper
MONTGOMERY, McCRACKEN,
 WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Respectfully submitted,

By: _David B. Tulchin_
     David B. Tulchin
     Joseph E. Neuhaus
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document Relates To:

*Kloth* v. *Microsoft Corp.,* No. 1:00cv02117

MDL Docket No. 1332
Hon. J. Frederick Motz

PUBLIC REDACTED
VERSION

**MICROSOFT'S MEMORANDUM IN SUPPORT OF
ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE
REGARDING DELIBERATE INCOMPATIBILITIES
BETWEEN WINDOWS AND DR DOS**

SULLIVAN & CROMWELL LLP
David B. Tulchin
Joseph E. Neuhaus
125 Broad Street
New York, New York 10004
(212) 558-4000

PIPER RUDNICK LLP
Michael F. Brockmeyer
Jeffrey D. Herschman
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

June 6, 2003

# TABLE OF CONTENTS

Page

BACKGROUND..................................................................................................... 2

ARGUMENT ........................................................................................................... 5

    I.    Internal Discussions about Possible Actions That Were Never Taken
        Are Irrelevant ................................................................................................ 5

    II.   Any Relevance of the Evidence at Issue Is Far Outweighed By the
        Risk of Undue Prejudice ............................................................................... 7

CONCLUSION ..................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### *Cases*

*Advo, Inc.* v. *Philadelphia Newspapers, Inc.*,
51 F.3d 1191 (3rd Cir. 1995) .......... 5, 6, 7, 8

*Anderson* v. *WBMG-42*,
253 F.3d 561 (11th Cir. 2001) .......... 9

*Morgan* v. *Ponder*,
892 F.2d 1355 (8th Cir. 1989) .......... 9

*Mullen* v. *Princess Anne Volunteer Fire Co., Inc.*,
853 F.2d 1130 (4th Cir. 1988) .......... 7

*SCFC ILC, Inc.* v. *Visa USA, Inc.*,
36 F.3d 958 (10th Cir. 1994) .......... 6

*United States* v. *Simpson*,
910 F.2d 154 (4th Cir. 1990) .......... 7

*United States* v. *Dowling*,
855 F.2d 114 (3rd Cir. 1988), *aff'd*, 493 U.S. 342 (1990) .......... 7

*Westfield Ins. Co.* v. *Harris*,
134 F.3d 608 (4th Cir. 1998) .......... 8, 9

### *Rules*

Fed. R. Civ. P. 26 (a)(2)(B) .......... 4

Fed. R. Evid. 401 .......... 5

Fed. R. Evid. 402 .......... 5

Fed. R. Evid. 403 .......... 7, 8

Fed. R. Evid. 702 .......... 4

### *Other Authorities*

2 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 403.02[2][c] .......... 7

2 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 403.04[1][b] .......... 8

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document Relates To:

*Kloth* v. *Microsoft Corp.*, No. 1:00cv02117

MDL Docket No. 1332
Hon. J. Frederick Motz

## MICROSOFT'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING DELIBERATE INCOMPATIBILITIES BETWEEN WINDOWS AND DR DOS

This motion in limine seeks to preclude plaintiffs from introducing evidence

purporting to show that Microsoft employees proposed to create deliberate

incompatibilities between Windows and DR-DOS, so that Windows would not run

properly on DR-DOS.[1] This motion does not seek to exclude evidence relating to the so-

called "AARD code."[2]

---

[1] For the purposes of this motion in limine, Microsoft assumes, for the sake of argument only, that plaintiffs' interpretation of this evidence is correct. However, Microsoft retains the right to contest plaintiffs' interpretation of this evidence. For example, the author of one e-mail                        (MDL Plaintiffs' trial exhibit number 1143) (Ex. A), David Cole,

Cole Dep. at 239:9-240:9 (Ex. B).

[2] The AARD code was a software routine that appeared only in a pre-release beta version of Windows 3.1. If the code did not detect MS DOS on a beta tester's computer, it displayed the message "non-fatal error detected." The AARD code did not prevent Windows from running properly with DR DOS. (*See* Expert Report of John K. Bennett, October 10, 2002 at 76 (Ex. C) (noting that plaintiffs' *Caldera* expert, Lee Hollaar, admitted that the AARD code had no effect on compatibility)). Plaintiffs' current technical expert, Ronald Alepin,

(Ex. D). Therefore, evidence relating to the AARD code does not fall within the scope of this motion.

It is undisputed that

*See, e.g.,*

Cole Dep. at 209:5-9; 240:23-241:2 (Ex. B); Gates Dep. at 472:23-473:21 (Ex. E);

Silverberg Dep. at 611:24-612:10 (Ex. F); Chase Dep. at 43:10-44:8 (Ex. G). As a result,

the evidence in question is irrelevant. Even if it were relevant, any relevance is heavily

outweighed by the undue prejudice and confusion its admission would cause.

## BACKGROUND

In their complaint, plaintiffs allege that Microsoft "creat[ed] deliberate

incompatibilities between Windows and DR-DOS, so that Windows would not run

properly on DR-DOS." (Complaint at ¶ 116.) Plaintiffs have designated certain trial

exhibits that supposedly show that Microsoft employees had internal e-mail discussions on

this subject.[3] However, there is no evidence that Microsoft ever <u>acted</u> on any such proposal

---

[3]    Some of these proposed exhibits are attached as Exhibits A, H, I, J, K, L, and M to this motion. For example, plaintiffs' exhibit number 1143 (Ex. E), purports to be an e-mail from David Cole to Karl Stock and Phil Barrett sent September 30, 1991:

or that these e-mail discussions came to fruition.  Indeed, the evidence is to the contrary.

First, Microsoft has produced in discovery its computer code, and plaintiffs have had every opportunity to have their technical experts and consultants scrutinize the code for evidence of deliberately-engineered incompatibilities.  Plaintiffs have also had every opportunity to depose past and present Microsoft employees who worked on or supervised the creation of the Windows computer code.  There is no evidence that Microsoft deliberately inserted code to prevent Windows from running properly on DR DOS.

Second, plaintiffs failed to proffer any expert testimony to support the complaint's allegations regarding deliberate incompatibilities.  In his report, plaintiffs' technical expert, Ronald Alepin, discussed incompatibilities between Windows 3.1 and DR DOS.  Expert Report of Ronald S. Alepin at 39-41 (Ex. D).

Alepin Dep. at 417:19-419:15 (Ex. N).

Plaintiffs' economics expert, Frederick Warren-Boulton,

He

states in his expert report:

·

Expert Report of Frederick Warren Boulton, August 26, 2002, p. 24-25 (Ex. O).  Yet Dr.

Warren-Boulton does not provide any basis or analysis to show that these incompatibilities were engineered for the purpose of preventing Windows from running on DR DOS.[4]

Third, the existence of incompatibilities is not evidence that those incompatibilities were intentionally created. Incompatibilities can be the natural result of upgrading Microsoft software (like Windows), or of problems with the non-Microsoft software (like DR DOS). Bugs and incompatibilities occur frequently in designing and upgrading software. As Dr. John Bennett stated in his expert report, "The fact that some Microsoft products did not execute correctly on OS/2 does not imply that Microsoft products were systematically designed to not work with OS/2." Expert Report of John K. Bennett, October 10, 2002 at 62 (Ex. C). Bennett's reasoning is directly applicable to DR DOS. Incompatibilities between an operating system and a piece of software can be caused by either the operating system or the software, and plaintiffs have furnished no explanation

---

[4] In addition, Dr. Warren-Boulton is an economist, and is not "qualified as an expert by knowledge, skill, experience, training, or education," as required by Federal Rule of Evidence 702, to testify to the existence of deliberately engineered technical incompatibilities. Dr. Warren-Boulton lacks any qualification to assess whether incompatibilities were deliberately engineered to prevent Windows from running on alien operating systems, or simply inadvertent "bugs." Indeed, Dr. Warren-Boulton admits in his deposition that he relies on Mr. Alepin for his analysis with respect to all such technical matters. Warren-Boulton Dep. at 23:4-8; 43:23-44:18; 45:23-48:1; 211:23-213:11 (Ex. P) ("I'm an economist and I do the economics and he's a technical expert.").

Moreover, the opinion quoted above regarding "Bambi" and the XMS drive falls short of Fed. R. Civ. P. 26(a)(2)(B)'s requirement that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions...."

Expert report of Frederick Warren Boulton, at 25 n. 57 (Ex. O).

nor offered any proof that any incompatibilities were caused solely by Windows as opposed to being caused by DR DOS.

## ARGUMENT

**I.     Internal Discussions about Possible Actions That Were Never Taken Are Irrelevant.**

Under Rule 402, "[e]vidence which is not relevant is not admissible." Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Harsh internal communications about how to gain a competitive edge are, absent objectively anticompetitive conduct linked to those communications, irrelevant in an antitrust action. These communications do not make any "fact of consequence" more or less probable.

The antitrust laws are intended to protect competition by prohibiting objectively anticompetitive conduct, not internal discussions about potentially anticompetitive conduct. In *Advo, Inc.* v. *Philadelphia Newspapers, Inc.*, 51 F.3d 1191 (3rd Cir. 1995), the Third Circuit considered internal statements such as a company's business plan that stated the goal of becoming a "one-stop buy" (i.e., the only competitor left) and a CEO's directive that "when [you] see the competition drowning, . . . stick a water hose down their throats," and concluded that internal statements such as these do not provide the basis for an antitrust claim:

> The antitrust statutes do not condemn, without more, such colorful, vigorous hyperbole; there is nothing to gain by using the law to mandate "commercially correct" speech within corporate memoranda and business plans. Isolated and unrelated snippets of such language "provide no help in deciding whether a defendant has crossed the elusive line separating aggressive competition from unfair competition."

*Advo*, 51 F.3d at 1199 (quoting *Morgan* v. *Ponder*, 892 F.2d 1355, 1359 (8th Cir. 1989)).

The evidence at issue here is not relevant to prove Microsoft had an anticompetitive "intent" or "mental state." Evidence of intent is relevant only if it is tied to actual anticompetitive conduct. When the conduct to which the intent is tied never occurred in the first place, the evidence is irrelevant. In *SCFC ILC, Inc.* v. *Visa USA, Inc.*, 36 F.3d 958 (10th Cir. 1994), the plaintiff offered evidence that a Visa USA Board member had anticompetitive intent when voting in favor of a Bylaw provision being challenged in the litigation. The Tenth Circuit found that the antitrust laws are not violated by anticompetitive intent:

> Most of this evidence relied upon by the district court is irrelevant to the central antitrust question posed, however. First, intent to harm a rival, protect and maximize profits, or "do all the business if they can," is neither actionable nor sanctioned by the antitrust laws. "Competition, which is always deliberate, has never been a tort, intentional or otherwise." "Most businessmen don't like their competitors or for that matter competition. They want to make as much money as possible and getting a monopoly is one way of making a lot of money." Thus, evidence that a Board member voted for Bylaw 2.06 to discourage price competition within Visa USA may reveal a mental state but is not an objective basis upon which section 1 liability may be found. If Bylaw 2.06 is not "objectively anticompetitive the fact that it was motivated by hostility toward competitors . . . is irrelevant."

36 F.3d at 969-70 (internal citations omitted).

Plaintiffs should not be permitted to introduce evidence that they will contend showed that Microsoft considered inserting code into Windows to prevent it from running with DR DOS — no matter how unflattering the plaintiffs imagine the evidence to be — because there is no evidence that Microsoft deliberately inserted such code. The evidence here at issue "provide[s] no help in deciding whether a defendant has crossed the elusive line separating aggressive competition from unfair competition." *See Advo*, 51 F.3d at

- 6 -

1199. It is therefore irrelevant and inadmissible.

## II.    Any Relevance of the Evidence at Issue Is Far Outweighed By the Risk of Undue Prejudice.

In the alternative, this motion should be granted because the evidence at issue has only marginal relevance which is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue . . . waste of time. . . ." Fed. R. Evid. 403. All of these factors are present here. In cases where the probative value of the evidence is low, exclusion is warranted when such prejudicial factors are present. 2 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 403.02 [2][c]; *United States* v. *Dowling*, 855 F.2d 114, 122 (3rd Cir. 1988) ("the marginal relevance of the evidence was more than amply outweighed by the potential prejudice"), *aff'd*, 493 U.S. 342 (1990). The minimal (if any) relevance of the evidence at issue is far outweighed by the danger that its admission will confuse the jury and unfairly prejudice Microsoft.

"Unfair prejudice" has been characterized by the Fourth Circuit as "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Mullen* v. *Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1134 (4th Cir. 1988); *see also United States* v. *Simpson*, 910 F.2d 154, 158 (4th Cir. 1990) (excluding evidence under Rule 403 where the "inherent risk of inflaming the jury, and of misleading it into focusing on the government's unsubstantiated and uncharged allegations of drug crimes [as opposed to charged offenses], was unacceptably high"). Similarly, the evidence here seems calculated to show, through the internal e-mail exchanges, that Microsoft "fit the profile" even though plaintiffs' allegations that the matters discussed actually occurred are entirely "unsubstantiated." The risk of thereby

- 7 -

inflaming and misleading the jury is very high.

Admission of the evidence at issue would create a significant risk that the jury might:

- be misled to believe that Microsoft did deliberately insert incompatibilities,

- confuse informal discussion with formal plans that were carried out in fact,

- be inflamed or confused by suggestions regarding conduct that is unsubstantiated by the evidence,

- be emotionally swayed in this and other areas of the case, and/or

- be confused by the technical discussion that would necessarily surround the evidence in question, despite the fact that the plaintiffs have no evidence to support the inferences they seek to raise.

Prejudice is also deemed "unfair" under Rule 403 if the evidence at issue is calculated to elicit a response that is not justified by the evidence. *See* 2 J. Weinstein & M. Berger, *Weinstein's Federal Evidence*, § 403.04[1][b] (collecting cases). If plaintiffs are permitted to publish these e-mails on the theory that they evidence anticompetitive intent, jurors may well infer that the code at issue was, in fact, inserted, or that these idle, internal discussions proposing intentional incompatibilities make it more likely that Microsoft engaged in other anticompetitive acts. Both of these inferences are impermissible, since incorrect thoughts are not actionable under the antitrust laws, *see Advo*, 51 F.3d at 1199, but it is precisely those inferences that the plaintiffs would like the jury to draw. Since this evidence would be presented to elicit a response that is not justified by the evidence, it should be barred. Indeed, the jury's response would likely be an emotional one, and Rule 403 calls for exclusion where "there is genuine risk that the emotions of the jury will be excited to irrational behavior." *Westfield Ins. Co.* v. *Harris*, 134 F.3d 608, 613 (4th Cir.

1998) (quoting *Morgan* v. *Foretich*, 846 F.2d 941, 945 (4th Cir. 1988)).

The presentation of these exhibits will also cause an undue waste of time. Plaintiffs have provided Microsoft with no specific allegation or technical analysis, or specific expert opinion regarding deliberate insertion of incompatibilities between Windows and DR DOS. Courts have approved of excluding evidence when a party failed to develop the underlying theory during discovery. *Anderson* v. *WBMG-42*, 253 F.3d 561, 566-67 (11th Cir. 2001) (district court did not err in excluding, in employment discrimination case, relevant testimony about disparate treatment of similarly situated white employees, when issues had not been developed during discovery and admission of testimony would have generated mini-trial on collateral issues unrelated to plaintiff's racial discrimination claim). The plaintiffs have similarly failed to develop evidence about the intentional insertion of incompatibilities into Windows in order to foil DR DOS. Plaintiffs neglect of intentional incompatibility claims has made these allegations a mere collateral issue that could only constitute a waste of this Court's and the jury's time. Microsoft would have to counter the false specter of this issue with many different witnesses, thereby threatening to spread the confusion widely within the case.

This prejudice would likely not be cured by a limiting instruction, since it would provoke jury animosity and confusion about conduct that never occurred. Plaintiffs should not be permitted to encourage the jury to draw an inference that the law does not permit — that mere discussion of anti-competitive conduct is evidence it occurred.

- 9 -

## CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court exclude evidence that Microsoft employees proposed to deliberately insert code into Windows designed to prevent Windows from running properly on DR DOS, and preclude any reference to such evidence by plaintiffs' counsel or testimony about it by plaintiffs' lay or expert witnesses.

Dated:  June 6, 2003

*Of Counsel*:

Charles B. Casper
MONTGOMERY, McCRACKEN,
 WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Respectfully submitted,

By: _David B. Tulchin_

    David B. Tulchin
    Joseph E. Neuhaus
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2003, I caused a copy of the foregoing

Microsoft's Motion in Limine to Exclude Evidence Regarding Deliberate

Incompatibilities Between Windows and DR DOS and accompanying public redacted

memorandum to be served by hand-delivery upon:

> Michael D. Hausfeld
> COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
> 1100 New York Avenue, N.W.
> West Tower, Suite 500
> Washington, DC  20005

> Conor R. Crowley
> FINKELSTEIN, THOMPSON & LOUGHRAN
> 1050 30th Street, N.W.
> Washington, DC  20007

and by first class mail upon:

> Stanley M. Chesley
> WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.
> 1513 Fourth & Vine Tower
> One West Fourth Street
> Cincinnati, OH  45202

Jeffrey D. Herschman