UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Kloth v. Microsoft Corp.*, 1:00 cv02117 | MDL Docket No. 1332<br>Hon. J. Frederick Motz<br><br>PUBLIC REDACTED VERSION |

**MICROSOFT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING DELIBERATE INCOMPATIBILITIES BETWEEN WINDOWS AND DR DOS**

SULLIVAN & CROMWELL LLP
David B. Tulchin
Joseph E. Neuhaus
125 Broad Street
New York, New York 10004
(212) 558-4000

PIPER RUDNICK LLP
Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar. No. 00101)
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

*(additional counsel listed on signature page)*

July 16, 2003

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................. 2

I. Plaintiffs Point To No Evidence That Microsoft Engineered Deliberate Incompatibilities Between Windows And DR DOS ........................................... 2

    A. The Smartdrive Disk Caching Utility "Bambi." ..................................... 2

    B. The AARD Code ..................................................................................... 3

    C. The XMS Version Check Routine ......................................................... 4

    D. The DR DOS Nested Task Flag ............................................................. 5

II. Internal Discussions about Possible Actions That Were Never Taken Are Irrelevant ............................................................................................................... 6

III. Any Relevance Of The Evidence At Issue Is Far Outweighed By the Risk of Unfair Prejudice ............................................................................................... 8

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

Page

### Cases

*Advo, Inc. v. Philadelphia Newspapers, Inc.*,
  51 F.3d 1191 (3d Cir. 1995) ............................................................................ 7

*Aspen Highland Skiing Corp. v. Aspen Skiing Co.*,
  738 F.2d 1509 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985) ......................... 6

*California Computer Prods., Inc. v. IBM*,
  613 F.2d 727 (9th Cir. 1979) .......................................................................... 5

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) ........................................................................................ 6

*In re Microsoft Corp. Antitrust Litig.*,
  MDL No. 1332, (D. Md. June 6, 2002) ......................................................... 5

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3rd Cir. 2003) ......................................................................... 6

*Morgan v. Ponder*,
  892 F.2d 1355 (8th Cir. 1989) ....................................................................... 7

*Northeastern Telephone Co. v. AT&T Co.*,
  651 F.2d 76 (2d Cir. 1981) ......................................................................... 6, 7

*SCFC ILC, Inc. v. Visa USA, Inc.*,
  36 F.3d 958 (10th Cir. 1994) .......................................................................... 7

*Transamerica Computer Co., Inc. v. I.B.M. Corp.*,
  481 F.Supp. 965 (N.D. Cal. 1979), *aff'd*, 698 F.2d 1377
  (9th Cir. 1983), *cert. denied*, 464 U.S. 955 (1983) ................................... 6, 7

*United States v. Bowie*,
  232 F.3d 923 (D.C. Cir. 2000) ....................................................................... 8

*United States v. Simpson*,
  910 F.2d 154 (4th Cir. 1990) ......................................................................... 9

*Westfield Ins. Co. v. Harris*,
  134 F.3d 608 (4th Cir. 1998) ......................................................................... 9

### Statutes

Fed. R. Evid. 403 ................................................................................................ 2
Fed. R. Evid. 404(b) ........................................................................................... 8

*Other Authorities*

Advisory Committee Note, Fed. R. Evid. 702 .................................................................. 9

WEINSTEIN & M. BERGER, *Weinstein's Federal Evidence* § 403.04[1][b] ........................ 9

WRIGHT & GRAHAM, *Federal Practice and Procedure* § 5239 ......................................... 8

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP.<br>ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Kloth v. Microsoft Corp.*, 1:00 cv02117 | MDL Docket No. 1332<br>Hon. J. Frederick Motz<br><br>PUBLIC REDACTED<br>VERSION |

**MICROSOFT'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE
REGARDING DELIBERATE INCOMPATIBLITIES
BETWEEN WINDOWS AND DR DOS**

Microsoft's motion presents a straightforward issue: whether evidence of internal discussions proposing that Microsoft insert computer code in Windows to prevent it from running on DR DOS -- where there is no evidence or even expert opinion that Microsoft ever actually engaged in this conduct -- should be excluded. Microsoft's central argument is that plaintiffs cannot identify any evidence that Microsoft implemented such a "proposal." In opposition, plaintiffs offer four purported "examples" of deliberate incompatibilities, but none involve cases where Microsoft deliberately engineered any technologies to be incompatible with DR DOS.

There is no dispute that, when it comes to software, the mere existence of incompatibilities does not establish that these incompatibilities were deliberately created. Plaintiffs have no evidence or expert opinion to establish that Microsoft purposely inserted into Windows code that was designed to create incompatibilities between Windows and DR DOS. Plaintiffs have pointed only to internal Microsoft e-mails about

how to gain a competitive edge. Absent some evidence that any conduct resulted, those e-mails are irrelevant. In the alternative, the evidence should be excluded under Federal Rule of Evidence 403 because the risk of undue prejudice substantially outweighs any potential probative value.

## ARGUMENT

### I. Plaintiffs Point To No Evidence That Microsoft Engineered Deliberate Incompatibilities Between Windows And DR DOS.

Plaintiffs offer four instances where Microsoft allegedly purposefully inserted code into Windows that was designed to prevent Windows from running properly on DR DOS. (Opp. Mem. at 6-11.) None of these instances show any such thing.

After years of discovery from Microsoft, plaintiffs have no evidence that Microsoft purposefully engineered incompatibilities between Windows and DR DOS. Plaintiffs have also engaged technical experts -- such as Mr. Alepin -- who have produced reams of reports, containing details about dozens of instances of Microsoft alleged conduct. Yet, plaintiffs have no expert opinion of use to them on this motion. While there may have been internal Microsoft e-mails proposing that certain actions be taken, plaintiffs have no evidence that Microsoft ever acted on these proposals.

#### A. The Smartdrive Disk Caching Utility "Bambi."

Plaintiffs contend that a 1991 error in a Windows Smartdrive disk caching utility known as "Bambi" shows that Microsoft created deliberate incompatibilities between Windows and DR DOS. (Opp. Mem. at 6.) "Bambi" was the code name for a Microsoft disk-caching utility included in a pre-release beta version of Windows 3.1 that

increased a computer's performance. (*See* Supplemental Report of John Bennett, *Caldera* v. *Microsoft*, December 28, 1999 ("Bennett Report") at 17-18 (Ex. AA)). In other words, Microsoft disabled some of its own features to protect DR DOS users from data loss.

As set forth in Microsoft's opening brief, at pp. 3-4, despite having access to Microsoft's computer code, plaintiffs have offered no expert testimony that the "Bambi" code was engineered for the purpose of preventing Windows from running on DR DOS. Plaintiffs do not address this argument at all. Rather, plaintiffs highlight internal Microsoft discussions about a *proposal* to have Bambi fail to run on DR DOS. (Opp. Mem. at 7; Exs. 20-22.) Absent evidence of any conduct linked to those communications, the e-mails are not relevant. *See* pp. 5-7 *infra*.

### B. The AARD Code.

Plaintiffs' argument that evidence regarding the 1991 "AARD code" shows deliberate engineering of incompatibilities is similarly misplaced. As set forth in Microsoft's opening brief, at p. 1 n.1, the "AARD code" was a software routine that appeared only in a pre-release beta version of Windows 3.1, and displayed the message "non-fatal error detected" if the code did not detect MS DOS on a beta tester's computer. (Microsoft Mem. at 1 n.2.) Microsoft specifically excluded evidence relating to the AARD code from the scope of its motion, and the AARD code did not prevent Windows from running properly with DR DOS. As a result, plaintiffs' arguments regarding the AARD code have no bearing on this motion.

### C.     The XMS Version Check Routine.

Plaintiffs also seek to admit evidence relating to the 1992 "XMS version check routine" that appeared in the pre-release beta version of Windows 3.1. This routine displayed a warning message on a beta tester's computer if it detected DR DOS. Like the AARD code, evidence regarding the XMS version check routine falls outside the scope of this motion, because it did not prevent Windows from running properly with DR DOS.[1]

In any event, plaintiffs offer no evidence that any message resulting from the XMS version check routine was deliberately inserted by Microsoft to frustrate DR DOS functioning. (*See* Bennett Report, at 41 (Ex. AA) (

)). To the contrary, John Constant of DRI, the developer of DR DOS, testified

(*id.* at 181:25-182:8), and

(Constant Dep. at 181:14-24 (Ex. BB).) Although Mr. Constant

(*id.*), this

---

[1]    Plaintiffs also gloss over a few other alleged "incompatibilities" that are simply error messages excluded from the scope of this motion. The 1989 Hangeul (Korean language) version of Windows presented a message to DR DOS users that Windows did not support the display of Korean characters (Opp. Mem. at 5). Not only is this not an "incompatibility,"

(*See* Bennett Report, at 10-17 (Ex. AA).) Similarly, the "Verify_DOS" code in the QuickPascal products provided users with a truthful and useful message about warranty protection; it was not an incompatibility at all.

-4-

does not establish that Microsoft deliberately engineered an incompatibility. In any event,

(Constant Dep. at 168:10 – 169:3 (Ex. BB).)

### D. The DR DOS Nested Task Flag.

Plaintiffs also contend that Microsoft failed to account for a 1992 bug in DR DOS -- called the "nested test flag" -- that caused the Windows 3.1 setup program not to execute on DR DOS. Putting to one side the fact that Microsoft has no duty to aid a competitor,[2] plaintiffs put forward no evidence that any such incompatibility was deliberately engineered by Microsoft. To the contrary, this incompatibility was caused by

(See Bennett Report at 24 (Ex AA).) Mr. Constant testified that

(Constant Dep. at 182:20-183:7 and 183:17-22. (Ex BB).) Indeed, shortly after Windows 3.1 was released publicly, DRI

(Id. at 167:20-168:2.)

Microsoft's motion does not address warning or "error" messages in Windows that did not result in Windows running improperly on DR DOS, such as the

---

[2] See California Computer Prods., Inc. v. IBM Corp., 613 F.2d 727, 744 (9th Cir. 1979) (holding IBM "need not have provided its rivals with disk products to examine and copy, nor have constricted its product development so as to facilitate sales of rival products") (internal citations omitted). In re Microsoft Corp. Antitrust Litig., MDL No. 1332, slip op. at 2 (D. Md. June 6, 2002) ("to require one company to provide its intellectual property to a competitor would significantly chill innovation").

AARD and XMS version check routine. Nor does the motion address allegations that Microsoft wrongfully failed or refused to correct incompatibilities between Windows and DR DOS once they were discovered (as opposed to deliberately engineering the incompatibilities in the first instance), such as the DR DOS nested task flag. As plaintiffs acknowledge (Opp. Mem. at 18), Microsoft's motion was "carefully drafted" to exclude evidence only of "'deliberately inserted code' for the purpose of foiling DR-DOS." That is indeed the relief Microsoft has sought, and this motion should be decided on the narrow issue presented.[3]

## II.  Internal Discussions about Possible Actions That Were Never Taken Are Irrelevant.

Plaintiffs argue that they should be permitted to introduce internal communications about potential conduct -- regardless of whether those actions were ever implemented -- to show Microsoft's intent to implement an anticompetitive design defect. (Opp. Mem. at 16 (citing *Northeastern Telephone Co. v. AT&T Co.*, 651 F.2d 76 (2d Cir. 1981) and *Transamerica Computer Co., v. IBM Corp. (In re IBM Peripheral EDP Devices Antitrust Litig.)*, 481 F. Supp. 965 (N.D. Cal. 1979), *aff'd*, 698 F.2d 1377 (9th

---

[3]  Plaintiffs' argument that Microsoft should not be permitted to challenge separately evidence relating to incompatibilities between Windows and DR DOS, and the alleged denial of a Windows beta to DRI/Novell (Opp. Mem. at 21), is unfounded. None of the authority cited by plaintiffs addresses whether a litigant must consolidate separate motions *in limine*. *See, e.g., Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) (motion for a directed verdict); *Aspen Highland Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985) (same). Although these cases state the principle that a jury may consider the evidence before it of anticompetitive acts as a whole, *LePage's Inc. v. 3M*, 324 F.3d 141 (3rd Cir. 2003), they do not hold, as
Footnote cont'd . . .

Cir.), *cert. denied*, 464 U.S. 955 (1983).) However, evidence of intent to implement a design defect is relevant only if it is tied to an actual anticompetitive design choice. *Transamerica Computer Co.*, 481 F. Supp. at 1003 ("[i]f the design choice is unreasonably restrictive of competition, the monopolist conduct violates the Sherman Act"); *see, e.g., Northeastern Telephone Co.*, 651 F.2d at 81 (design change was deliberately instituted with advance knowledge of the effect it would have on its competitor's product). Plaintiffs have provided no evidence linking various internal communications by Microsoft employees with a company decision to make an anticompetitive "design choice" resulting in an incompatibility with DR DOS.[4] As a result, the evidence of consideration of the topic by some employees is irrelevant and should be excluded. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958 (10th Cir. 1994) (if an act is not "objectively anticompetitive the fact that it was motivated by hostility toward competitors . . . is irrelevant"); *Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191 (3d Cir. 1995).[5]

---

. . . cont'd footnote
    plaintiffs contend, that evidence may be relevant if it has "inherent synergies" with other evidence. (Opp. Mem. at 21.)

[4] Plaintiffs assert that Microsoft "appears to concede" that if it did deliberately instigate incompatibilities it would be "in violation of the antitrust laws." (Opp. Mem. at 1.) Microsoft made no such "concession." Its motion *in limine* addressed the evidentiary issue, not the legal test.

[5] Contrary to plaintiffs' argument (Opp. Mem. at 19), the court in *Advo* did not simply "object" that plaintiffs "created a damaging statement by cutting and pasting together" a damaging statement. The critical point made by the *Advo* court was its conclusion that "[t]he antitrust statutes do not condemn, without more, such colorful, vigorous hyperbole." 51 F.3d at 1199 (citing *Morgan v. Ponder*, 892 F.2d 1355, 1359 (8th Cir. 1989)). The fact that the colorful
Footnote cont'd . . .

Plaintiffs incorrectly argue that evidence of internal discussions about potential conduct is admissible under Fed. R. Evid. 404(b) as proof of motive, opportunity, intent or plan. (Opp. Mem. at 16.) Plaintiffs have the rule backwards. Rule 404(b) provides:

> Evidence of other *crimes, wrongs, or acts* . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...

(emphasis added). By its plain terms, Rule 404(b) allows evidence of prior acts to be admitted to show aspects of a person's state of mind. It does not allow evidence of state of mind to be introduced regarding other, never executed, acts to prove that a person committed an act. *See, e.g., United States v. Bowie*, 232 F.3d 923, 927-28 (D.C. Cir. 2000) (Rule 404(b) "applies only to evidence of a defendant's 'other crimes, wrongs, or acts'") (collecting cases); 22 WRIGHT & GRAHAM, *Federal Practice and Procedure* § 5239 at 445 (1978). The discussions in question do not amount to "crimes, wrongs or acts" under the rule. They are inchoate proposals never realized, not crimes, wrongs or acts already committed.

### III. Any Relevance Of The Evidence At Issue Is Far Outweighed By the Risk of Unfair Prejudice.

Plaintiffs argue that the evidence at issue would allow the jury to *infer* a causal connection between Microsoft's internal statements and the deliberate creation of

---

. . . cont'd footnote
    statement was made by the plaintiffs' CEO had no bearing on the court's decision. (Opp. Mem. at n.77.)

-8-

intentional incompatibilities between Windows and DR DOS. (Opp. Mem. at 24-25.) This is precisely why the evidence must be excluded.

As plaintiffs concede, evidence is unfairly prejudicial if it may "arouse the jury's hostility or sympathy to one side without regard to the probative value of the evidence" (Opp. Mem. at 24). *See* 2 J WEINSTEIN & M. BERGER, *Weinstein's Federal Evidence*, § 403.04[1][b] (collecting cases). Such is the case here. Despite years of discovery, and prolix expert reports, plaintiffs have no technical analysis or expert opinion regarding deliberate insertion of any incompatibilities between Windows and DR DOS. Yet, plaintiffs would have the jury determine that various technical incompatibilities between Windows and DR DOS were deliberately engineered -- even though their own technical expert, Mr. Alepin, declined to so opine. *See* Advisory Committee Note, Fed. R. Evid. 702 ("An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge"); 4 WEINSTEIN & M. BERGER, *Weinstein's Federal Evidence*, § 702.06[2][a] ("expert testimony regarding the causation issue proves useful, and, perhaps, mandatory"). Without any evidence that any such conduct occurred, the e-mail discussions should be barred as unduly prejudicial. *See Westfield Ins. Co. v. Harris*, 134 F.3d 608, 613 (4th Cir. 1998); *see also United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990).

## CONCLUSION

Microsoft respectfully requests that its motion to exclude certain evidence relating to the alleged deliberate incompatibilities be granted.

Respectfully submitted,

Of Counsel:

Charles B. Casper
MONTGOMERY, McCRACKEN,
 WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080


Dated: July 16, 2003

By: /s/ David B. Tulchin
David B. Tulchin
 Joseph E. Neuhaus
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2003, I caused a copy of the foregoing Microsoft's Reply Memorandum in Support of Its Motion in Limine to Exclude Evidence Regarding Deliberate Incompatibilities Between Windows and DR DOS (Public Redacted Version) to be served upon the following by Federal Express:

Michael D. Hausfeld
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Stanley M. Chesley
WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202

_____
Jeffrey D. Herschman