UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document Relates To:

*Kloth* v. *Microsoft Corp.*, No. 1:00cv02117

MDL Docket No. 1332
Hon. J. Frederick Motz

# MICROSOFT'S MEMORANDUM IN OPPOSITION TO THE MOTION BY CERTAIN LAWYERS FOR AN ADVISORY OPINION CONCERNING A POTENTIAL FEE APPLICATION

MONTGOMERY, McCRACKEN,
  WALKER & RHOADS, LLP
Charles B. Casper
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

MICROSOFT CORPORATION
Richard J. Wallis
Steven J. Aeschbacher
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

SULLIVAN & CROMWELL LLP
David B. Tulchin
125 Broad Street
New York, New York 10004
(212) 558-4000

PIPER RUDNICK LLP
Michael F. Brockmeyer
Jeffrey D. Herschman
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

November 17, 2003

# TABLE OF CONTENTS

Page

Background ...................................................................................................... 1

    A.    Federal Overcharge Litigation .................................................. 2

    B.    State-Court Overcharge Litigation ........................................... 5

    C.    This Motion ............................................................................. 7

    D.    Motion of "National Plaintiffs' Counsel" for Fees
            in the Florida Litigation ......................................................... 7

ARGUMENT ................................................................................................... 8

    I.    Movants' Motion Violates Rule 7 Because It Requests an
        Advisory Opinion ................................................................... 9

    II.    Principles Concerning an Award of Fees to Counsel ............ 10

    III.    The Relief Movants Assert that They May Seek Is Unsupported
         by Any Precedent .................................................................. 11

         A.    There Is No Authority for this Court to Award Fees
             to Movants for the Results in State Court ................................ 11

         B.    This Court Does Not Have Jurisdiction to Resolve
             a Motion Regarding an Alleged Breach of Contract
             Between Movants and Unspecified Attorneys
             Representing State-Court Plaintiffs .......................................... 14

         C.    Movants Cannot Initiate an Interpleader Action ..................... 15

CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## *Cases*

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ........................ 10

*Fawcett* v. *McRoberts*, 326 F.3d 491 (4th Cir. 2003) .................................................... 9

*Fobian* v. *Storage Technology Corp.*, 164 F.3d 887 (4th Cir. 1999) ............................ 9

*Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) ................................................................................... 9

*Grace* v. *Carroll*, 219 F. Supp. 270 (S.D.N.Y. 1963) .................................................. 16

*Hartman* v. *Microsoft Corp.*, No. 99-27340
    (Fla. Miami-Dade County Ct. Nov. 15, 2001) ......................................................... 7

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
    549 F.2d 1006 (5th Cir. 1977) ............................................................................... 14

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)*
    *Prods. Liab. Litig.*, No. 1203, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999) ............. 14

*In re Linerboard Antitrust Litig.*, MDL No. 1261, 2003 WL 22061259
    (E.D. Pa. Sept. 5, 2003) ......................................................................................... 13

*In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702 (D. Md. 2001) .................. 4

*In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519 (D. Md. 2002) .................. 4

*In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371 (D. Md. 2003) .......................... 4

*In re Microsoft Corp. Antitrust Litig. (Conway Mackenzie & Dunleavy, P.C.* v.
    *Microsoft Corp.)*, No. 02-3331, 2003 WL 22662352 (D. Md. Nov. 4, 2003) ........... 4

*In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.*,
    No. 1332 (J.P.M.L. Apr. 25, 2000) ......................................................................... 2

*In re Microsoft Litig.*, MDL No. 1332 (D. Md. Apr. 4, 2001) ....................................... 5

*In re Pantopaque Prods. Liab. Litig.*, 938 F. Supp. 266 (D.N.J. 1996) ....................... 15

*In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.*,
    MDL No. 1387, 2002 WL 31834446 (D. Md. Apr. 12, 2002) ............................... 14

*In re Rezulin Prods. Liab. Litig.*, No. 00civ2843, 2002 WL 441342
(S.D.N.Y. Mar. 20, 2002) ........................................................................14

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig. II*,
953 F.2d 162 (4th Cir. 1992) ..................................................2, 12, 13, 14

*Lujan* v. *Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)......................................9

*Network Solutions, Inc.* v. *Clue Computing, Inc.*,
946 F. Supp. 858 (D. Col. 1996)............................................................15

*N.Y. Gaslight Club, Inc.* v. *Carey*, 447 U.S. 54 (1980) ................................11

*O'Shea* v. *Yellow Tech. Servs., Inc.*, 208 F.R.D. 634 (D. Kan. 2002)............................9

*Olson* v. *Microsoft Corp.*, No. CDV-2000-219
(Mont. Lewis & Clark County Ct. Sept. 17, 2003)....................................6

*Pennsylvania* v. *Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986)..............................................................................10

*Ramseur* v. *Reich*, No. 2:95-0382, 1997 WL 907896
(S.D. W. Va. Mar. 31, 1997) ...................................................................9

*Snellman* v. *Ricoh Co.*, 836 F.2d 528 (9th Cir. 1987) ...................................9

*United States* v. *Prescott*, 221 F. 3d 686 (4th Cir. 2000) .............................13

*Webb* v. *Bd. of Ed. of Dyer County*, 471 U.S. 234 (1985)............................11

*Wertz* v. *Grubbs*, No. 93-2355, 1995 WL 3164 (4th Cir. Jan. 5, 1995) ........................9

*Younger* v. *Harris*, 401 U.S. 37 (1971) ....................................................13

### *Statutes and Rules*

15 U.S.C. § 15 .......................................................................................10

28 U.S.C. § 1335 ...................................................................................15

Fed. R. Civ. P. 7 ...................................................................................8, 9

### *Other Authorities*

Charles A. Wright & Mary K. Kane, *Law of Federal Courts* (6th ed. 2002) ................9

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document Relates To:

*Kloth* v. *Microsoft Corp.*, No. 1:00cv02117

MDL Docket No. 1332
Hon. J. Frederick Motz

## MICROSOFT'S MEMORANDUM IN OPPOSITION TO THE MOTION BY CERTAIN LAWYERS FOR AN ADVISORY OPINION CONCERNING A POTENTIAL FEE APPLICATION

Certain lawyers -- purportedly on behalf of the Plaintiffs' Lead Counsel Committee established in this Court's Pretrial Order No. 1 (referred to as "Movants" herein) -- have filed a motion asking the Court for its advice about possible mechanisms for recovering fees.[1]  Not only does the motion improperly seek an advisory opinion, but the relief that Movants seek is without precedent.  Principles of federalism preclude any such relief.

The "Motion for Consideration," as it is denominated, should be denied.

### Background

In their motion of October 31, 2003, Movants argue that this Court "has authority to award attorneys fees . . . for both state and federal cases" on the ground that "federal courts may award attorneys fees and reimburse expenses incurred in related state-court

---

[1]    The Motion of Plaintiffs' Lead Counsel Committee for Consideration of Petition for Fees and Expenses for Work Performed on a Coordinated Basis for State and Federal Cases ("Motion for Consideration") was submitted by Mr. Hausfeld's and Mr. Chesley's firms, purportedly on behalf of Plaintiffs' Lead Counsel Committee, whose members are listed in Appendix A.

matters." (Memorandum in Support of Motion for Consideration ("Mem.") at 14-15.)
This proposition is directly contrary to controlling precedent in this Circuit. The Court of
Appeals for the Fourth Circuit has held that a "district court overseeing multi-district
litigation" cannot enter attorneys' fee payment orders that "affect[] state court
proceedings" because a federal court "simply has no power to extend the obligations of its
order" to the state courts. *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig. II*,
953 F.2d 162, 165, 166 (4th Cir. 1992). The cases cited by Movants involve either
(1) orders concerning related cases in the same jurisdiction or (2) the entry of separate
orders by federal and state courts where there was a pre-existing agreement to coordinate
attorneys' fee awards. Neither situation is presented here, where Movants seek to have this
Court override state courts' authority to determine the proper award of fees in cases within
their jurisdiction. Indeed, at about the same time Movants filed this motion in federal
court, they also moved in a Florida state court for an order compelling Microsoft to pay
them more than $31 million in connection with the Florida settlement.

**A.**     **Federal Overcharge Litigation.**

Since November 1999, many putative class actions have been filed in state and
federal courts around the country alleging that end-users had been overcharged for
Microsoft software and seeking damages for those alleged overcharges. Most of those
actions were filed in state courts around the country.

By order dated April 25, 2000, the Judicial Panel on Multidistrict Litigation
transferred to this Court 27 actions in federal courts seeking overcharge damages from
Microsoft. *In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.*, No. 1332

(J.P.M.L. Apr. 25, 2000) (attached hereto as Exhibit A). Other tag-along actions have since been transferred to this Court.

In Pretrial Order No. 1, entered on June 26, 2000, the Court appointed nine attorneys as Plaintiffs' Lead Counsel Committee. (Pretrial Order No. 1 ¶ 12 (attached hereto as Exhibit B).) Contrary to Movants' assertion, the Court did not "appoint" those lawyers to manage both the federal- and state-court litigations. (Mem. at 1.) All nine members of the Plaintiffs' Lead Counsel Committee represented plaintiffs in actions that were then pending in this Court,[2] and they were appointed to "facilitate . . . the prosecution and litigation of plaintiffs' claims in the Consolidated Action" -- a term defined in Pretrial Order No. 1 as those actions "transferred to this Court" by the JPML. (Pretrial Order No. 1 ¶¶ 13, 1.)

Pretrial Order No. 1 did, however, acknowledge the pendency of related state-court litigation against Microsoft, and specifically required Plaintiffs' Lead Counsel Committee to "seek to confer with counsel for the parties in the cases pending in state courts for the purposes of negotiating stipulations or agreements coordinating pretrial discovery." (Pretrial Order No. 1 ¶ 11.)

Apparently, the members of Plaintiffs' Lead Counsel Committee (including Messrs. Chesley and Hausfeld) have never obtained any agreements from the lawyers prosecuting the state-court actions concerning any division of attorneys' fees.

---

[2]      Appendix A lists the nine lawyers appointed to Plaintiffs' Lead Counsel Committee in Pretrial Order No. 1 and an action in which each member's firm appeared on a complaint pending in this Court at the time Pretrial Order No. 1 was entered.

Pursuant to Pretrial Order No. 1, the Executive Committee filed the *Kloth* v. *Microsoft* action on July 12, 2000. The *Kloth* complaint "supercede[d] the federal claims asserted in all of the transferred actions except [*Gravity*]." *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 704 (D. Md. 2001). On January 12, 2001, this Court dismissed the federal damages claims of those who did not purchase software "directly from Microsoft." *Id.* at 709.

Movants assert that after this Court's January 2001 decision "the federal case . . . had a greatly reduced value of approximately $10.5 million." (Mem. at 3.) Although the shop.microsoft.com case was settled for that amount in 2003, there was much more at stake throughout 2001, 2002, and up until November 4, 2003. During that time, Movants sought to certify (1) first, a national settlement class of all "persons and entities who have acquired licenses for Microsoft operating system or applications software in the United States since January 1, 1985," *In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519, 521 (D. Md. 2002), (2) later, a class of "Select" and "Enterprise" customers, *In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371, 373 (D. Md. 2003), and (3) finally, a class of OEMs, "Large Account Resellers," distributors, and direct resellers, *In re Microsoft Corp. Antitrust Litig. (Conway Mackenzie & Dunleavy, P.C.* v. *Microsoft Corp.)*, No. 02-3331, 2003 WL 22662352, at *2 (D. Md. Nov. 4, 2003). The alleged damages suffered by those proposed classes were many, many times greater than $10 million. Indeed, in the *Conway, Mackenzie & Dunleavy* case, these same lawyers claimed that the putative class suffered damages totaling $20 billion after trebling.

Approximately 130 depositions were taken between May 2001 and July 2002 under an order governing deposition practice entered in both the California state-court litigation

- 4 -

and this Court.  The order established a process by which judges in state-court litigations could "coordinate their cases with the California litigation and the MDL litigation."  *In re Microsoft Litig.*, MDL No. 1332, slip op. at 1 (D. Md. Apr. 4, 2001).  Many state courts adopted that procedure, and thus depositions noticed in either the California litigation or this litigation were deemed to have been noticed in many parallel state-court proceedings as well.  The discovery taken in the consumer overcharge cases was, moreover, deemed to have been taken in the *Conway, Mackenzie & Dunleavy* litigation, which Movants described as being based on "the same claims that have been litigated by the other purchaser plaintiffs in MDL 1332 since MDL 1332's inception."  (January 17, 2003 Memorandum in Support of Motion to Enter Scheduling Order at 1 (attached hereto as Exhibit C).)  Thus, Movants' time and effort -- in effect, their "lodestar" -- was expended on a number of claims and cases where they sought large recovery from Microsoft.

As part of the September 2003 settlement of the shop.microsoft.com case, Microsoft agreed to pay "reasonable attorneys' fees and costs [to Movants] in an amount to be determined by the Court" and "not to oppose an application for fees and expenses in an aggregate amount of no more than $10,500,000."  (Settlement Agreement § VI.B (attached hereto as Exhibit D).)

**B.      State-Court Overcharge Litigation.**

While the federal actions were being prosecuted, many cases against Microsoft were simultaneously being prosecuted in state courts around the country.  Actions brought on behalf of putative classes in 16 states -- Colorado, Connecticut, Hawaii, Indiana, Kentucky, Maryland, Missouri, Nebraska, Nevada, New Hampshire, Ohio, Oklahoma,

Oregon, Rhode Island, Texas and Wisconsin -- have been dismissed.[3]  No fees have been awarded to the lawyers who prosecuted those cases.  Indeed, counsel for a putative class ordinarily takes the risk that if they lose, they will obtain nothing.  (This is why when those lawyers are successful, their "lodestar" is often enhanced through a multiplier.)

In 10 jurisdictions -- California, District of Columbia, Florida, Kansas, Montana, North Carolina, North Dakota, South Dakota, Tennessee and West Virginia -- Microsoft has reached settlements with class counsel.[4]  Pursuant to these settlements, class members who purchased certain Microsoft software during the class period are eligible to receive vouchers that can be redeemed for cash against purchases of a wide variety of platform-neutral hardware and software.  To the extent that class members do not execute their right to claim vouchers, a portion of the difference between the face value of the settlement and the face amount of issued vouchers will go to eligible public schools as a cy pres remedy in the form of vouchers that may be used to purchase platform-neutral computer hardware, software, training and support.[5]

---

[3]    Appeals of the dismissals in Hawaii, Nebraska, Ohio, and Wisconsin are pending. A trial court in a seventeenth state -- Maine -- has denied class certification.

[4]    Besides these states, there are also cases pending in the state courts of Arizona, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, New Jersey, New York, New Mexico and Vermont.

[5]    In September, a court in Montana granted final approval of the Montana settlement and awarded fees to the class's lawyers. *Olson* v. *Microsoft Corp.*, No. CDV-2000-219, slip op. at 4 (Mont. Lewis & Clark County Ct. Sept. 17, 2003) (attached hereto as Exhibit E).  Of the other nine settlements, seven have received preliminary approval, and motions seeking preliminary approval are pending in two courts.

## C.    This Motion.

On October 31, 2003, Movants filed this motion, setting forth four possibilities by which "[c]ounsel for plaintiffs in MDL No. 1332" might seek to recover money from Microsoft or other lawyers "for work done and expenses incurred on a coordinated basis for all of the federal and state cases against Microsoft alleging overcharges for Windows and applications software products."  (Mem. at 14.)  No actual request for fees and expenses is included in the Motion for Consideration -- indeed, Movants expressly state that they "will file their formal fee petition with the Court according to the schedule set forth in the Court's order granting preliminary approval" of the shop.microsoft.com settlement.  (Mem. at 14.)

Although the Court had asked the parties to confer with each other regarding the resolution of fee issues, Movants filed this motion without any advance notice to Microsoft and without conferring about its substance with Microsoft's lawyers.

## D.    Motion of "National Plaintiffs' Counsel" for Fees in the Florida Litigation.

In the Florida case, Microsoft and the attorneys appointed by the Florida court to represent the Florida class[6] reached agreement on a settlement earlier this year.  The settlement was preliminarily approved on April 15, 2003, and a hearing on the motion for final approval is scheduled for November 24, 2003.  These lawyers have informed

---

[6]    *Hartman* v. *Microsoft Corp.*, No. 99-27340, slip op. at 3 (Fla. Miami-Dade County Ct. Nov. 15, 2001) (order appointing Kirby McInerney & Squire, LLP and Hare, Wynn, Newell & Newton as "Plaintiffs' Co-Lead Counsel" in the Florida litigation and also appointing five other firms as members of plaintiffs' "Executive Committee" to "assist[] in the litigation") (attached hereto as Exhibit F).

Microsoft that they will be seeking fees of more than $34 million. Microsoft intends to oppose that application in the Florida court.

On November 4, the same lawyers who filed this Motion for Consideration here (including Mr. Chesley and Mr. Hausfeld) also filed a motion in the Florida case seeking an award of fees and expenses from the Florida court on account of the Florida settlement. Specifically, the MDL lawyers assert that, as a group, they performed legal services that "benefited" the state-court plaintiffs throughout the country, and that this work has an aggregate lodestar value of $21,985,280. (Motion of National Plaintiffs' Counsel for Attorneys' Fees, Ex. 17 ¶ 12 (attached hereto as Exhibit G).) They also assert that they incurred expenses of $9,602,970 that "provid[ed] benefits to state cases in general." (*Id.* ¶ 13.)

Even assuming this is so, the $31,588,250 in so-called "benefits" presumably should be allocated among the state-court cases in 37 states. Despite this, Mr. Chesley, Mr. Hausfeld, and the other MDL lawyers have asked for all $31 million to be awarded by the Florida court.

## ARGUMENT

Movants do not apply to this Court for any specific relief but instead ask the Court to join them in their musings about the appropriateness of possible paths. This request is in plain violation of Fed. R. Civ. P. 7(b), which requires that a motion make a specific request for relief, and the prohibition against advisory opinions. Moreover, there is no authority that would support the relief Movants potentially may seek.

I.    **Movants' Motion Violates Rule 7 Because It Requests an Advisory Opinion.**

"It is a fundamental matter of practice in federal court that all applications for an order shall be made by motion . . . so that the court will not be left to speculate as to any relief sought." *O'Shea* v. *Yellow Tech. Servs., Inc.*, 208 F.R.D. 634, 635 (D. Kan. 2002). Thus, Fed. R. Civ. P. 7(b) expressly requires motions to "set forth the relief or order sought." Whether a writing satisfies the Rule 7(b) definition of a "motion" turns on whether the putative movant has "unambiguously set forth the relief sought." *Lujan* v. *Nat'l Wildlife Fed'n*, 497 U.S. 871, 909 n.10 (1990) (internal quotation marks and citation omitted); *see also Wertz* v. *Grubbs*, No. 93-2355, 1995 WL 3164, at *7 n.5 (4th Cir. Jan. 5, 1995) ("[I]t is perilous to ignore Rule 7(b)(1) which requires a motion . . . to 'state with particularity the grounds therefor, and . . . set forth the relief or order sought'") (quoting Fed. R. Civ. P. 7(b)(1)). If papers submitted to a court do not "set forth the relief or order sought," the document is not a motion, and the court will not treat it as such. *See Ramseur* v. *Reich*, No. 2:95-0382, 1997 WL 907896, at *22 (S.D. W. Va. Mar. 31, 1997); *see also Snellman* v. *Ricoh Co.*, 836 F.2d 528, 532 (9th Cir. 1987).

This requirement that Movants unambiguously set forth the relief sought stems from the prohibition against advisory opinions, which commentators have observed is "the oldest and most consistent thread in the federal law of justiciability." Charles A. Wright & Mary K. Kane, *Law of Federal Courts* 65 (6th ed. 2002). As the Fourth Circuit has repeatedly recognized, federal courts have "no authority" to decide or give opinions on "abstract propositions." *Fawcett* v. *McRoberts*, 326 F.3d 491, 494 (4th Cir. 2003); *see also Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*, 204 F.3d 149, 164 (4th Cir. 2000) ("Courts must avoid . . . reaching beyond jurisdictional limits to decide abstract questions"); *Fobian* v. *Storage Tech. Corp.*, 164 F.3d 887, 891 (4th Cir. 1999)

("[i]ndisputably, federal courts are . . . prohibited from issuing opinions advising what the law would be upon a hypothetical state of facts") (internal quotation marks and citation omitted).

The Motion for Consideration fails to meet these fundamental requirements because it does not state the relief Movants seek. Instead, the motion simply informs the Court of actions that Movants may take and invites the Court to provide its views about these potential courses of action. The appropriateness of (1) an interpleader action, (2) a separate action against state-court counsel, (3) a fee application under the shop.microsoft.com settlement for work that benefited state-court plaintiffs, or (4) a motion to this Court seeking an order directing state counsel to pay fees to Movants can and should be considered if, and only if, Movants in fact decide to seek such relief. But until they choose a path and act on it, the Motion for Consideration impermissibly calls for an advisory opinion.

## II.     Principles Concerning an Award of Fees to Counsel.

The Supreme Court has repeatedly reaffirmed "the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, 421 U.S. 240, 257 (1975). When fees are shifted, and one party is ordered to pay the fees of another -- as under the federal antitrust laws, for instance, where an allowance of attorneys' fees to a plaintiff awarded treble damages is mandatory, 15 U.S.C. § 15 -- fees are generally awarded only for work done on behalf of the prevailing party. Even the cases Movants rely on, where courts have awarded fees based on work done in related proceedings, recognize this principle. *See, e.g., Pennsylvania* v. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (attorney fee may be

awarded for time spent in related administrative proceedings that were "'necessary' to secure the final result obtained from the litigation") (quoting *Webb* v. *Bd. of Ed. of Dyer County*, 471 U.S. 234, 243 (1985)); *N.Y. Gaslight Club, Inc.* v. *Carey*, 447 U.S. 54, 71 (1980) (fee award appropriate for "work done by the prevailing complainant" in related administrative proceedings).

Here, in contrast, Movants seek an award from this Court not for results obtained on behalf of their clients in this action, but rather on account of work that benefited plaintiffs in other actions (where these lawyers are not counsel of record) in state courts.

## III.    The Relief Movants Assert that They May Seek Is Unsupported by Any Precedent.

For the reasons above, this Court should not entertain Movants' motion. But even if Movants were to request the forms of relief hypothesized in their brief, the Court would be required to deny them. Indeed, the situation in which Movants now find themselves was foreseeable, and by failing to obtain fee agreements with the lawyers prosecuting the state-court cases, Movants are responsible for their own predicament. In any event, Movants may seek to apply for fees -- as they have in Florida -- from the state courts in cases where a settlement has been reached and approved.

### A.    There Is No Authority for this Court to Award Fees to Movants for the Results in State Court.

Movants' principal argument is that a federal court "has authority to award attorneys['] fees to the [federal] Lead Counsel Committee . . . for both state and federal cases" on the ground that "federal courts may award attorneys['] fees and reimburse expenses incurred in related state-court matters." (Mem. at 14-15 (capitalization altered).)

- 11 -

None of the authority Movants cite supports this proposition, and it is in fact directly contrary to controlling precedent in this Circuit.

In *Showa Denko*, the Court of Appeals for the Fourth Circuit reviewed an order that required lawyers in the federal case and lawyers in related state-court actions to contribute to a fund used to defray expenses incurred by the lead federal lawyers. After holding that interlocutory review was appropriate in view of the "serious question" raised "about the power of a district court overseeing multi-district litigation to enter an order . . . affecting state court proceedings," the circuit court vacated the order as it pertained to state-court actions on the ground that a federal court "simply has no power to extend the obligations of its order" to plaintiffs or their lawyers in state-court litigation. 953 F.2d at 165, 166.

A related provision of the district court's order in *Showa Denko* -- requiring defendant to certify that the state-court plaintiffs had made the required payments -- was also vacated. Recognizing that the "effective[]" result of this provision was to force defendant to "exact the assessments" from state-court plaintiffs, the Court found the provision impermissible not only because it suffered from the same "overreaching" that infected the order's directive to the attorneys representing state-court plaintiffs, but also because it had "the very real potential of interfering with" the underlying state-court litigation, thereby "raising questions of conflict with the policy of comity between federal and state courts." *Id.*

As the Fourth Circuit has observed, that policy of comity is "based on 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their

separate functions in their separate ways.'" *United States* v. *Prescott*, 221 F.3d 686, 689

(4th Cir. 2000) (quoting *Younger* v. *Harris*, 401 U.S. 37, 44 (1971)). Here, those concerns

all counsel against intruding upon a state court's allocation of attorneys' fees in connection

with the settlement of an action before it.

Movants wrongly assert that *Showa Denko* stands for the proposition that a district

court may "require[] the defendant to pay to the lead counsel an assessment based on the

amounts of settlements in the cases not before the district court." (Mem. at 21 (citing

*Showa Denko*, 953 F.2d at 166).) Not so. There was no requirement in the district court's

order that defendant pay federal plaintiffs' counsel on account of settlements reached in

state-court litigation, and, as described above, the Fourth Circuit struck a provision that

had the practical effect of forcing defendant to ensure such payments. Likewise, Movants'

assertion that this Court could "require Microsoft to pay fees commensurate with the value

of the time and expenses incurred by the Lead Counsel Committee for all cases," leaving

Microsoft to "argue for a reduction in fee awards in the state cases to the extent that this

Court's award includes fees attributable to benefits conferred in those cases" (Mem. at 15),

invites exactly the sort of "interfer[ence]" with state-court proceedings condemned in

*Showa Denko*.[7]

---

[7]    The Eastern District of Pennsylvania recently followed *Showa Denko* in a
       multidistrict litigation by denying lead counsel's motion to "order sequestration [of
       a portion of any settlement] in . . . . state cases" on the ground that federal courts
       "lack[] jurisdiction to order sequestration . . . in state cases." *In re Linerboard
       Antitrust Litig.*, MDL No. 1261, 2003 WL 22061259, at *17, 15 (E.D. Pa. Sept. 5,
       2003) (capitalization and italics omitted).

The other cases cited by Movants[8] are also of no help to them.  These cases all involved pre-existing express fee agreements between federal and state lawyers or coordinate orders entered in state courts regarding fee arrangements.  No such agreements exist here.  None of the other decisions cited by Movants even remotely supports the extraordinary relief sought here.[9]  As the Fourth Circuit recognized in *Showa Denka*, a fee petition seeking relief on account of work benefiting state-court plaintiffs implicates "serious" questions regarding "the policy of comity between federal and state courts." 953 F.2d at 165, 166.

> **B.** **This Court Does Not Have Jurisdiction to Resolve a Motion Regarding an Alleged Breach of Contract Between Movants and Unspecified Attorneys Representing State-Court Plaintiffs.**

Movants' second suggestion -- that this Court entertain a motion compelling state plaintiffs' counsel "to compensate the Lead Counsel Committee from fees awarded in the state courts that are attributable to the work[,] effort and expenses of the Lead Counsel

---

[8]    *See In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.*, MDL No. 1387, 2002 WL 31834446, at *3 (D. Md. Apr. 12, 2002) (providing for payment of fees to federal counsel on account of settlements reached in state-court litigation only where the state courts had previously entered an express "state-federal coordination" order regarding fees); *In re Rezulin Prods. Liab. Litig.*, No. 00civ2843, 2002 WL 441342, at *2 (S.D.N.Y. Mar. 20, 2002) (ordering compensation to federal counsel on account of settlements in related state-court actions where state-court plaintiff had expressly "agree[d] to be bound by" fee-arrangement provisions in federal-court order); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, No. 1203, 1999 WL 124414, at *4-5 (E.D. Pa. Feb. 10, 1999) (payment to federal counsel on account of settlement of state-court action where the state court had previously entered an express "state-federal coordination" order regarding fees).

[9]    *See, e.g., In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1010 n.5 (5th Cir. 1977) ("we . . . do not specifically consider the authority of the district court to assess a fee in cases not formally before it").

- 14 -

Committee" on account of their "implied[] consent[]" to pay for Movants' work (Mem. at 15) -- is equally unfounded. A federal court in the District of New Jersey rejected a similar proposal in the pantopaque multidistrict litigation. There, a lawyer sought to enforce an alleged agreement made with another attorney regarding the sharing of "discovery and 'work product' materials." *In re Pantopaque Prods. Liab. Litig.*, 938 F. Supp. 266, 267 (D.N.J. 1996). The Court held that it had no jurisdiction over "[p]rivate disputes" between the lawyers on the ground that the dispute between the lawyers "was not part of the controversy between the pantopaque producers and plaintiffs." *Id.* at 268.

### C.    Movants Cannot Initiate an Interpleader Action.

Movants' final suggestion -- that this Court indicate its willingness to "entertain an interpleader action under 28 U.S.C. § 1335" (Mem. at 25) -- is as unfounded as their other suggestions. Movants claim that an interpleader action is "clearly authorized in this context." (Mem. at 25.) But not one of the cases Movants cite to support this proposition is even remotely related to Movants' situation. That is because the interpleader statute is plainly inapplicable, for at least two reasons.

*First*, 28 U.S.C. § 1335 requires that a plaintiff initiating an interpleader action show that "the plaintiff has deposited such money or property" as is at issue "into the registry of the court." 28 U.S.C. § 1335(a)(2). Movants, of course, have not done so for the obvious reason that they are not the custodian of any sum of money in dispute, and, as discussed above, no definitely ascertainable sum even exists.

*Second*, parties seeking interpleader must demonstrate that they are "disinterested stakeholder[s] praying the Court to resolve a dispute between adverse parties." *Network Solutions, Inc.* v. *Clue Computing, Inc.*, 946 F. Supp. 858, 861 (D. Col. 1996); *see also*

*Grace* v. *Carroll*, 219 F. Supp. 270, 274 (S.D.N.Y. 1963) ("disinterested stakeholder is the only party who can seek interpleader").  Because Movants are claiming that they are owed a portion of any fees awarded to state plaintiffs by state-court judges, they are obviously not "disinterested" stakeholders.[10]

---

[10]   Microsoft takes no position regarding the merits of a possible independent action by Movants against individual state-court lawyers on the ground that they "impliedly consented" to pay Movants (Mem. at 15), as long as those actions seek no relief from Microsoft and seek exclusively to require individual lawyers to pay Movants from their own personal funds.

## CONCLUSION

The Motion for Consideration should not be entertained.  In any event, this Court ought not to interfere with the prerogatives of state courts that are considering fee applications by lawyers.  Indeed, Movants themselves appear to recognize that state courts are the proper forum for their fee applications by seeking $31 million from the Florida court presiding over the Florida settlement.

Dated:  November 17, 2003

*Of Counsel*:

Charles B. Casper
MONTGOMERY, McCRACKEN,
  WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Respectfully submitted,

By: _David B Tulchin_
      David B. Tulchin
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar. No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

*Attorneys for Microsoft Corporation*

- 17 -

## Appendix A

### Plaintiffs' Lead Counsel Committee

Ben Barnow                *Nielsen* v. *Microsoft Corp.*, No. 1:00cv01262 (subject to JPML transfer order dated April 25, 2000).

Joseph Danis              *Precision Billing Services, Inc.* v. *Microsoft Corp.*, No. 1:00cv01256 (subject to JPML transfer order dated April 25, 2000).

Stanley Chesley           *Tyler* v. *Microsoft Corp.*, No. 1:00cv01244 (subject to JPML transfer order dated April 25, 2000).

Michael Hausfeld          *Deiter* v. *Microsoft Corp.*, No. 1:00cv01250 (subject to JPML transfer order dated April 25, 2000).

Robert Lieff              *Davenport* v. *Microsoft Corp.*, No. 1:00cv01268 (subject to JPML transfer order dated April 25, 2000).

Christopher Lovell        *Pryor* v. *Microsoft Corp.*, No. 1:00cv01263 (subject to JPML transfer order dated April 25, 2000).

Alice McInerney           *Wilson* v. *Microsoft Corp.*, No. 1:00cv01257 (subject to JPML transfer order dated April 25, 2000).

Leonard Simon             *Mims* v. *Microsoft Corp.*, No. 1:00cv01243 (subject to JPML transfer order dated April 25, 2000).

Douglas Thompson          *eLeaders, Inc.* v. *Microsoft Corp.*, No. 1:00cv01248 (subject to JPML transfer order dated April 25, 2000).

CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2003, I caused a copy of the foregoing document to be served upon the following by Federal Express:

Stanley M. Chesley
Waite, Schneider, Bayless
   & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH  45202

Michael D. Hausfeld
Daniel A. Small
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC  20005

Jeffrey D. Herschman